OPINION
{¶ 1} Defendant-appellant, George S. Jordan, III, appeals from a jury conviction for felonious assault with a firearm specification. Because the sufficiency and manifest weight of the evidence support the trial court's judgment, and because the record does not demonstrate that defendant was rendered ineffective assistance of counsel, but because the trial court should have entered a judgment of acquittal, rather than a nolle prosequi, on the charge of carrying a concealed weapon, we affirm the trial court's judgment as modified.
 {¶ 2} Defendant's conviction arose out of events occurring the evening of September 6, 2003. According to the state's evidence, on that day Romeo Dunlap called Columbus police to his apartment at 2865 Citizen's Place after a person Dunlap identified as defendant shot a gun through the apartment door. Given the appearance of the door, Detective Kevin Jackson opined at trial that "[b]asically, from my experience, someone would have been right at that door and fired directly through the entry door to that apartment. The bullet basically, upon penetrating that door, caused it to basically explode, causing fragments from the door and the bullet to go off in several directions." (Tr. 42.)
 {¶ 3} At the time of the incident, defendant was living with Dunlap's daughter, Christina Reese, who testified the couple had an argument the morning of the incident, after which she dropped him off at his mother's house and headed to her father's apartment. Reese denied the argument was serious, and she stated defendant later joined her at her father's apartment where the three of them drank coffee and talked. Reese then went with her father and uncle on an errand, and defendant left.
 {¶ 4} According to her testimony, Reese returned to her apartment at about 1:00 p.m., and she and defendant watched television together until around 5:00 p.m., when she dropped defendant off at his mother's house and went to visit a friend. She testified that later that evening, while she was still at her friend's house, she received a telephone call from her brother, telling her that someone shot a gun into her father's apartment. She stated she did not stay at her apartment that night because evidence indicated someone also shot through the door there. Reese denied defendant was responsible for the shooting and said she did not know who would have done it. According to Reese, her father did not approve of her dating defendant, but was always cordial to him. She testified she did not know if her father would lie to get defendant in trouble.
 {¶ 5} Dunlap testified that he arrived home at about 9:00 or 10:00 p.m. on the night of the incident, checked his messages, and around 10:30 or 11:00 p.m., prepared to take a shower. As he was about to enter the shower, he heard knocking at his door, but decided to ignore it and proceed with his shower. He testified that loud knocking continued, finally causing him to get out of the shower and go to the door in a towel. He gave the following account of what happened when he answered the door:
A. I looked through the peephole to see who it was, and it was the defendant, so I opened the door a crack. I cracked the door so I could speak to him, and I assumed he had came back for Christina.
* * *
Q. And why was that as far as you got?
A. Well, I saw a flash of metal in his hand.
* * *
Q. Do you know why you saw a flash of metal?
A. All I could say, there's a light on our porch and I guess the angle kind of just flashed it, kind of gave me a flash like.
Q. What did you do?
A. I ducked back in the house.
Q. What happened next?
A. I called his name, again, asked him, "What was going on, Cheech," and I peeked back around the door.
Q. What happened?
A. Then he raised the gun and fired it.
Q. You saw the gun?
A. Yeah, I saw the gun.
Q. What did you do?
A. I ducked back into the house and pushed the door shut.
Q. One shot?
A. One shot.
Q. What did you do after that?
A. Hit the floor, crawled up the hall and grabbed the phone.
Q. What did you do with the phone?
A. I dialed 9-1-1 and told the operator that I was just shot at and I needed the police to come there.
(Tr. 88-90.)
 {¶ 6} After the state rested, defendant moved under Crim.R. 29 to dismiss a charge of carrying a concealed weapon. Defendant based his motion on Dunlap's testimony that he saw only a flash of metal; he did not state that he saw defendant pull a weapon out of a pocket or that the weapon was otherwise concealed prior to its use. Agreeing the evidence failed to support a concealed weapon charge, the state withdrew the charge, and the trial court sustained the Crim.R. 29 motion as to the charge of carrying a concealed weapon.
 {¶ 7} In defendant's defense, his brother, Antonio Jordan, testified that defendant was with him all evening, socializing in a parking lot of an apartment complex. According to Antonio, around 10:30 p.m., Antonio, defendant, and their friend, Preston Cooper, left the parking lot and started home. Antonio testified that they went first to the home of Julia Knox, who is Antonio's and defendant's mother. There they provided a ride home to the mother of Antonio's baby, DeQuasha Moore; that trip took about 15 to 20 minutes each way. According to Antonio, they arrived back at their mother's house between 11:00 and 11:25 p.m. Preston Cooper testified that he was with Antonio and defendant all evening, until they arrived back at Knox's home, where he left in his own car. Moore's testimony corroborated Antonio's description of the events of the evening.
 {¶ 8} Finally, Knox testified that she is a former Franklin County Sheriff's deputy, and she confirmed that her son, with Antonio, drove Moore home the night of the incident. About five to ten minutes after they left, she received a telephone call from Reese, who stated defendant "had shot at her dad's house." (Tr. 170.) Knox asked when the shooting occurred, and Reese "goes, `Right now.' I'm like, `He couldn't have. He's here. I mean, he just left to take, you know, DeQuasha home.' `And as soon as they get back,' I said, `I'll have him call you as soon as he gets back.' As soon as he got back, I told him what — the call I had received." (Tr. 170-171.)
 {¶ 9} Knox indicated that she informed defendant of the call when he returned, but there was no answer at Reese's apartment when they tried to call her. Reese testified she was awakened around 3:00 or 4:00 a.m. when police came to arrest defendant. Knox said she questioned defendant about whether he had a gun, and he denied both having a gun and using Knox's gun, which she testified she kept locked in a safe.
 {¶ 10} The jury entered a verdict of guilty on the charge of felonious assault with a firearm specification. The trial court sentenced defendant to two years on the felonious assault conviction, with an additional three years on the firearm specification, for a total of five years incarceration. Appellant now appeals and assigns the following errors:
ASSIGNMENT OF ERROR NUMBER ONE
THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE PRESENTED ON BEHALF OF THE STATE WAS INSUFFICIENT TO SUSTAIN THIS FINDING BY PROOF BEYOND A REASONABLE DOUBT AND THE JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.
ASSIGNMENT OF ERROR NUMBER TWO
THE DEFENDANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I, OF THE OHIO CONSTITUTION AND THE DEFENDANT WAS FURTHER DEPRIVED OF A FAIR TRIAL BY THE ACTS OF THE PROSECUTOR IN IMPROPERLY SUGGESTING THAT THERE WERE FACTS OUTSIDE THE RECORD THAT ESTABLISHED THAT THE DEFENDANT HAD A MOTIVE TO COMMIT THE OFFENSE.
ASSIGNMENT OF ERROR NUMBER THREE
THE TRIAL COURT ERRED WHEN IT FAILED TO ENTER A JUDGMENT OF ACQUITTAL ON THE CRIM.R. 29 MOTION AT THE CLOSE OF THE STATE'S CASE AFTER IT WAS DETERMINED THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CHARGE OF CARRYING A CONCEALED WEAPON.
 {¶ 11} In his first assignment of error, defendant asserts that because the state's evidence consisted solely of eyewitness testimony to identify defendant as the perpetrator, defendant's conviction is not supported by sufficient evidence or the manifest weight of the evidence.
 {¶ 12} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 13} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra;Thompkins, at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the weight of the evidence are reserved for cases where the evidence weighs heavily in favor of defendant. State v.Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 14} Here, no weapon or forensic evidence tied defendant to the shooting; only Dunlap's eyewitness testimony identified defendant as the shooter. Construed in favor of the state, Dunlap's testimony is sufficient to support the jury's verdict. Defendant's contentions regarding the sufficiency of the evidence thus are unpersuasive. As to the manifest weight of the evidence, this court frequently has held that, even where discrepancies exist, eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable juror could find the eyewitness testimony to be credible. See, e.g., State v.Coleman (Nov. 21, 2000), Franklin App. No. 99AP-1387; State v. Artis (May 17, 1994), Franklin App. No. 93APA11-1547; State v. Epley (Sept. 17, 1998), Franklin App. No. 97APA12-1611.
 {¶ 15} The evidence in this case established that Dunlap was well-acquainted with defendant, who only that morning had been a visitor in Dunlap's home. Dunlap testified he saw defendant both through the peephole of his door and then face-to-face. Although defendant attempted to establish that the apartment hallway was poorly lighted, on re-direct Dunlap testified that light coming from the interior of his apartment illuminated defendant's face. Despite some testimony that Dunlap did not like defendant and did not approve of him as a companion for his daughter, the evidence provided little or no support for defendant's theory that animosity prompted Dunlap to give false testimony identifying defendant as the shooter. In fact, the testimony established that Dunlap, Reese, and defendant had been on friendly terms earlier that day, with Dunlap inviting defendant into his home for coffee. From all of this evidence, the jury was entitled to accept as credible Dunlap's testimony identifying defendant. Based upon these considerations, we overrule defendant's first assignment of error.
 {¶ 16} Defendant's second assignment of error first asserts he was rendered ineffective assistance of counsel. To demonstrate ineffective assistance of counsel, the defendant must meet a two-part test.Strickland v. Washington (1984), 466 U.S. 668, 686. Initially, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth
Amendment. Id. The defendant then must show that counsel's deficient performance prejudiced the defense. Id. This requires showing that but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. Unless the defendant makes both showings, it cannot be said the conviction resulted from a breakdown in the adversary process that rendered the result unreliable.
 {¶ 17} "There is a strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy." State v. Nichols (1996), 116 Ohio App.3d 759, 764. (Citations omitted.) "Even debatable trial tactics do not constitute ineffective assistance of trial counsel." Id. The determining issue is "whether the accused, under all the circumstances, including the fact that he had retained counsel, had a fair trial and substantial justice was done." State v. Cooperrider (1983), 4 Ohio St.3d 226, 228, citingState v. Hester (1976), 45 Ohio St.2d 71, paragraph four of the syllabus.
 {¶ 18} Defendant first argues his counsel improperly failed (1) to give a proper notice of alibi and (2) to request discovery in a mistaken belief that doing so strengthened defendant's case. According to defendant, trial counsel at least should have requested limited discovery. Despite the absence of a proper notice of alibi, the trial court permitted defendant to introduce alibi evidence, and defendant as a result sustained no prejudice from counsel's omission. The issue of whether trial counsel should have sought discovery from the state involves facts outside the record and therefore is the subject of a post-conviction relief action. Cooperrider, supra (noting that "the General Assembly has provided a procedure whereby appellant can present evidence of his counsel's ineffectiveness * * * through the post-conviction remedies of R.C. 2953.21").
 {¶ 19} Defendant also contends his trial counsel should have requested an in camera inspection of Dunlap's prior statements, since these statements may have assisted in undermining Dunlap's credibility on cross-examination. Again, however, the issue involves matters outside the record, as the record is unclear whether prior statements existed, much less their content. Thus, the issue of whether defense counsel's effectiveness in relation to Dunlap's statements, if any, likewise is a matter for post-conviction relief proceedings.
 {¶ 20} Defendant also urges his trial counsel should have done more to counteract the effects of prosecutorial suggestions that the argument between defendant and Reese was more serious than Reese relayed in her testimony, and that defendant's actions were motivated by his emotional response to having "broken up" with Reese that day. According to defendant, only the prosecutor's suggestion supported the conclusion that the couple had broken up, and defense counsel should have objected to the state's improper effort to bolster Dunlap's testimony identifying defendant as the shooter.
 {¶ 21} Several factors render defendant's argument unpersuasive. First, although it alone does not dispose of defendant's contentions, the trial court instructed the jury that statements and questions of counsel were not to be considered evidence in the case. A jury may be presumed to follow the instructions of the court. Pang v. Minch (1990),53 Ohio St.3d 186, 195. Moreover, Dunlap testified that at the conclusion of defendant's visit to Dunlap's apartment earlier that day, Reese rejected defendant's attempt to speak privately with her and told him to go home. The jury could place whatever weight on Dunlap's statements, combined with Reese's testimony concerning the earlier fight, it deemed appropriate.
 {¶ 22} Finally, placing any suggestion of motive from the prosecution in the context of all of the evidence presented at trial, we cannot say that the outcome of the trial was affected. The core of the state's theory of defendant's motive for the shooting was presented through the noted portions of Reese's and Dunlap's description of the rift between defendant and Reese on the day of the incident. The prosecution's remarks, even if improper, did not so embellish the testimony of Reese and Dunlap as to prejudice defendant beyond the prejudice defendant sustained as a result of the testimony of Reese and Dunlap. See State v.Williams, 99 Ohio St.3d 439, 2003-Ohio-4164, ¶ 44 (observing that the touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor"), quoting Smith v. Phillips (1982),455 U.S. 209, 219. Thus, we cannot say either that prosecutorial misconduct deprived defendant of a fair trial, or that any failure by defendant's counsel to address any adverse effect of the prosecution's statements resulted in prejudice to defendant.
 {¶ 23} Finally, defendant faults his trial counsel for failing to argue theories of innocence in the closing argument. Given Dunlap's identifying defendant as the shooter, defense counsel had a limited basis upon which to rest a theory of innocence. Apart from the lack of forensic evidence tying defendant to the crime, defense counsel was left to, and did, contend that Dunlap did not like defendant and did not approve of him as a boyfriend for his daughter. Such an argument, however, was undermined by testimony indicating the two men had a cordial, friendly relationship, and though Dunlap would not have chosen defendant for his daughter, his reservations did not rise to the level of falsely accusing defendant or framing him for the shooting.
 {¶ 24} In the final analysis, the evidence demonstrated someone shot through Dunlap's door, and Dunlap saw the shooter and identified him as defendant. Defense counsel cannot be faulted for failing to propound implausible theories of defendant's innocence, including defendant's suggestion that Dunlap, trying to put an end to defendant's relationship with Reese, shot both his and Reese's doors and then called police to name defendant as the perpetrator. As a result, we cannot say that, based upon the record, defendant has shown that defense counsel's performance was deficient or that defendant was prejudiced. Accordingly, we overrule defendant's second assignment of error.
 {¶ 25} Defendant's third assignment of error asserts the trial court erroneously entered a judgment of nolle prosequi on the charge of carrying a concealed weapon, contrary to the agreement of the parties and an instruction to the jury that insufficient evidence supported the concealed weapon charge. As in the trial court, the state properly concedes that an acquittal on the charge is appropriate. Because defendant's third assignment of error correctly claims the trial court should have entered a judgment of acquittal after having granted defendant's Crim.R. 29 motion, defendant's third assignment of error is sustained.
 {¶ 26} Based upon the foregoing, we overrule defendant's first and second assignments of error, and sustain his third assignment of error. The judgment of the Franklin County Court of Common Pleas is affirmed as to defendant's conviction for felonious assault with the gun specification, but is modified to reflect a judgment of acquittal on the charge of carrying a concealed weapon.
Judgment affirmed as modified.
Brown, P.J., and Klatt, J., concur.