OPINION
{¶ 1} Appellant, Julius O. Whiteside ("appellant"), filed this appeal from a judgment by the Franklin County Court of Common Pleas convicting him of having a weapon while under disability in violation of R.C. 2923.13. For the reasons that follow, we affirm the trial court's judgment. *Page 2 
 {¶ 2} On the morning of September 14, 2005, Erika Lewis, her friend Donee, and Donee's son were approached by a person Lewis subsequently identified as appellant. Lewis did not know appellant, who introduced himself as Nut, prior to that time. Appellant and Lewis engaged in some conversation, and ultimately exchanged the numbers (referred to as "chirp" numbers) that could be used to direct connect their cell phones.
 {¶ 3} Later that day, appellant called Lewis while she, Donee, and Donee's son were at a Wendy's and asked her if she wanted to get something to eat and wanted a ride home. Lewis said yes, and appellant arrived shortly thereafter in a blue pickup truck, accompanied by a person he identified as his nephew. The group then went to Lewis' apartment at 1964 Maryland Avenue in the Nelson Park apartments. Appellant and his nephew left when Lewis' cousin arrived to take Lewis to pick up her daughter. Appellant and Lewis then had additional contact when she arranged to meet him at a house off of Fifth Avenue so Lewis could obtain some marijuana, after which Lewis returned home.
 {¶ 4} Later that night, as Lewis prepared to go to bed, appellant contacted her on her chirp number and asked if she wanted company. Lewis said yes, and asked appellant to bring items necessary for her to make a "blunt" so she could smoke marijuana. Shortly thereafter, appellant arrived at Lewis' apartment with the necessary items, and asked Lewis if his uncle and cousin could also come in to smoke marijuana. When she let appellant's uncle and cousin into the apartment, Lewis saw the same blue pickup truck appellant had given her a ride in earlier that day.
 {¶ 5} Lewis then left the three men in her kitchen while she went to her friend Synneatra Lovett's apartment to ask Lovett to join them. Lovett and another friend of Lewis', Wonquet Reeves, went with Lewis back to her apartment. Appellant, Lewis, *Page 3 
Reeves, and Lovett sat in the kitchen of the apartment while the men appellant had identified as his uncle and his cousin sat in the living room. Lewis testified that all except appellant were smoking marijuana. Lewis, Reeves, and Lovett each testified that as he was sitting in the kitchen, appellant had a handgun, described as a silver revolver with a beige or black handle, on his lap.
 {¶ 6} At some point, Jaron Armstrong, with whom Lewis had a dating relationship until approximately two weeks prior, rode by the back door on a bicycle two or three times. The last time Armstrong rode by, he stopped and said something through the closed screen door to Lewis in a loud voice. Lewis testified that Armstrong said he was going to go home, get a gun, and come back and "shoot * * * up" the apartment. (Tr. 504.) Armstrong then rode away on the bicycle. Lewis and Reeves each testified that they did not take Armstrong's threats seriously, and that they told appellant not to pay any attention to Armstrong.
 {¶ 7} Appellant went into the living room and held a whispered conversation with his uncle and cousin, although none of the witnesses could hear what was said. Eventually, the three men left the apartment through the back door and headed toward the blue pickup truck. Lewis and Reeves each testified that from the back door of the apartment, they saw appellant and Armstrong standing in the parking lot talking to each other. Each also testified that neither appellant nor Armstrong appeared to be angry or yelling, but that appellant gestured toward his back pocket, in which they could see a handgun. The two then separated when Armstrong began walking away toward his sister's apartment, which was located nearby in the same complex. *Page 4 
 {¶ 8} A short time later, Lewis, Reeves, and Lovett all heard the sound of gunshots coming from near the apartment. Each of the three testified that they went out the front door of the apartment and saw appellant running through a cut between buildings in the complex with a gun in his hand. Appellant got into the blue pickup truck, which then drove away. Lewis and Reeves testified that they saw Armstrong standing at the door of his sister's apartment, bleeding from the mouth.
 {¶ 9} Armstrong's sister, Lakeisha Irvin, lived in a nearby apartment at 1986 Maryland Avenue. She testified that on the night in question, she had gone to bed when she heard gunshots from outside her apartment, followed by a knocking on her door. She looked outside the door and saw Armstrong lying against a wall, bleeding from the mouth. Takai Estridge and her sister, Toshia, who lived in the apartment next to Irvin's, also testified that they heard gunshots from outside, and heard knocking on the door of their apartment. Armstrong ultimately ended up lying on the steps of the Estridge apartment, where he died soon after. An autopsy showed gunshot wounds to the arm and chest, with the chest wound being the ultimate cause of death.
 {¶ 10} Appellant was indicted by the Franklin County Grand Jury on one count of aggravated murder and one count of having a weapon while under disability. The jury in the first trial was unable to reach a verdict on either count and a mistrial was declared. For the second trial, appellant elected to waive his right to a jury on the charge of having a weapon while under disability. The jury was again unable to reach a verdict on the aggravated murder charge, and a mistrial was declared as to that charge. The trial court found appellant guilty of having a weapon under disability, and sentenced appellant to a term of incarceration of five years, the maximum sentence the court could impose. *Page 5 
 {¶ 11} Appellant filed this appeal, alleging three assignments of error: *Page 6 
 FIRST ASSIGNMENT OF ERROR
 Appellant's conviction for having a weapon while under a disability was against the manifest weight of the evidence. This error deprived Appellant of his right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section Sixteen of the Ohio Constitution.
 SECOND ASSIGNMENT OF ERROR
 The trial court erred when sentencing Appellant to a maximum prison term, in contravention of the Sixth Amendment to the United States Constitution and the Ex Post Facto and Due Process clauses of the United States Constitution.
 THIRD ASSIGNMENT OF ERROR
 Appellant was deprived of the effective assistance of counsel due to counsel's failure to raise the issue of or object to a sentence imposed in contravention of Blakely v. Washington (2004), 542 U.S. 296 and United States v. Booker (2005), 543 U.S. 220.
 {¶ 12} In his first assignment of error, appellant argues that his conviction for having a weapon while under disability was against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967), 10 Ohio St.2d 230, *Page 7 
39 O.O.2d 366, 227 N.E.2d 212, at paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 13} R.C. 2923.13(A) provides, in relevant part, that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordinance, if any of the following apply: * * * (2) [t]he person is under indictment for or has been convicted of any felony offense of violence[.]" R.C. 2923.11(B)(1) provides that "`Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." The parties stipulated that appellant had a prior conviction for purposes of R.C. 2923.13(A)(2).
 {¶ 14} Appellant first argues that the evidence regarding his possession of a weapon on the night in question was contradictory. For example, Reeves' testimony regarding when she saw appellant holding a gun in Lewis' kitchen was inconsistent, with her stating at different times that she did not remember seeing the gun, or that she saw appellant with the gun earlier on in the day in question rather than that evening. Appellant also argues that, because Lovett testified that she is legally blind, her testimony that she saw appellant holding the gun should be disregarded. In addition, appellant points to inconsistencies between the testimony of the witnesses, including, but not limited to, differing testimony regarding the appearance of the gun, which pocket appellant was carrying the gun in when he was speaking to Armstrong in the parking lot, and whether or not appellant and his companions exited and reentered the front door of Lewis' apartment *Page 8 
before exiting through the back door. Finally, appellant points to evidence provided by several of the witnesses regarding usage of marijuana before the incident.
 {¶ 15} We cannot say that the inconsistencies are of such a nature that the trial court in its role as fact finder lost its way in finding that appellant had a firearm on the night in question. A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. Moreover, the inconsistencies in the evidence, as well as the evidence regarding Lovett's vision impairment and the usage of marijuana by several witnesses, were before the trial court for its consideration, and while we sit as a "thirteenth juror" in evaluating appellant's manifest weight argument, we must give great deference to the fact finder's determination regarding the credibility of the witnesses. See State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503. Given the trial court's superior position to consider the demeanor and weigh the credibility of the various witnesses, we do not believe the court lost its way when it found the evidence that appellant had a weapon credible.
 {¶ 16} Appellant also argues that his conviction was against the manifest weight of the evidence because no evidence was ever offered that the handgun was operable, and was therefore "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant" as required by the definition of firearm set forth in R.C. 2923.11(B)(1). Appellant argues that the only way for the trial court to have concluded that the weapon was operable was by concluding that appellant used the handgun to shoot Armstrong, which appellant argues would require an impermissible stacking of inferences. *Page 9 
 {¶ 17} R.C. 2923.11(B)(2) specifically provides that, in determining the operability of a firearm, the trier of fact may rely on circumstantial evidence, which may include the representations and actions of the individual who has control over the firearm. It is not necessary for the state to produce the gun or offer direct, empirical evidence that the gun is operable. State v. Murphy (1990),49 Ohio St.3d 206, 551 N.E.2d 932. Instead, proof of operability may be established through the testimony of lay witnesses who were in a position to observe the weapon and the surrounding circumstances.
 {¶ 18} Although none of the witnesses at trial actually witnessed the shooting, all the witnesses present at the apartment complex at the time of the shooting heard gunshots. The testimony showed that appellant and his two companions left Lewis' apartment very soon after Armstrong had threatened to bring a gun back to Lewis' apartment, that appellant and Armstrong had a discussion in the parking lot of the complex during which appellant gestured toward a gun in his pocket, that appellant was seen running between buildings away from where the gunshots were fired with a gun in his hand, and that appellant immediately left the scene in a vehicle. This evidence, particularly the evidence that appellant was gesturing toward a gun in his pocket while talking to Armstrong, followed by appellant's action running away from the area where Armstrong had been shot while carrying the gun, constituted sufficient circumstantial evidence that the weapon was operable.
 {¶ 19} Although the jury was unable to reach a verdict regarding whether appellant shot and killed Armstrong, we cannot say that the trial court in its separate role of fact finder as to the charge of having a weapon under disability lost its way in finding that this constituted circumstantial evidence that the handgun was operable. *Page 10 
 {¶ 20} Accordingly, appellant's first assignment of error is overruled.
 {¶ 21} In his second assignment of error, appellant argues that the trial court erred when it sentenced him to the maximum term of incarceration for the offense of which he was convicted. Initially, we note that appellant failed to raise this issue when the trial court imposed sentence, and therefore waived all but plain error.
 {¶ 22} Appellant argues that the trial court failed to make any findings justifying imposition of a maximum prison term as required by R.C. 2929.14(C), which was the statute governing imposition of maximum terms of incarceration in effect at the time the offense for which appellant was convicted was committed. However, as noted by appellant, the R.C. 2929.14(C) requirement that certain factual findings be made by a sentencing court prior to imposition of a maximum sentence was one of the sentencing provisions held unconstitutional by the Supreme Court of Ohio in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470.
 {¶ 23} In reaching this conclusion, the court followed the decisions by the United States Supreme Court in Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403; and United States v.Booker (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, in which the United States Supreme Court had generally held that sentencing provisions that require judicial fact-finding to impose more than a minimum sentence violate the constitutional right to a jury trial. As a remedy, the court in Foster severed the unconstitutional provisions, including R.C. 2929.14(C). As a result of this severance, trial courts have the discretion to impose any sentence within the general *Page 11 
statutory range for the offense for which a defendant has been convicted without making any factual findings. Foster, at ¶ 102.
 {¶ 24} Appellant nevertheless argues that because the offense for which he was convicted was committed prior to the Foster decision, his sentence must be evaluated under the Apprendi-Blakely-Bookeranalysis, which would have prohibited imposition of a maximum sentence based on facts not found by the jury or, in this case, by the trial court in its role as fact finder. Appellant argues that otherwise, application of the Supreme Court of Ohio's judicial construction of the Ohio sentencing provisions in Foster would constitute a violation of appellant's right to due process and right against application of ex post facto laws, because appellant could not have been aware of that construction at the time of the commission of the offense.
 {¶ 25} In a number of cases, we have previously rejected similar arguments that application of the Foster severance remedy violates the due process and ex post facto constitutional provisions. See, e.g.,State v. Cunningham, Franklin App. No. 06AP-317, 2007-Ohio-2785;State v. Fout, Franklin App. No. 06AP-664, 2007-Ohio-619. Thus, we cannot conclude that the trial court erred when, applyingFoster, it imposed a maximum sentence upon appellant's conviction for having a weapon while under disability.
 {¶ 26} Appellant also argues that the trial court abused its discretion by imposing the maximum sentence for the offense, based on the fact that appellant could not have committed the worst form of the offense. Appellant argues that, while he had prior convictions for robbery and for menacing, the offense here did not involve repetition of either of those offenses. Essentially, appellant argues that the only reason the trial court *Page 12 
could have imposed the maximum sentence here was that the trial court believed appellant was guilty of killing Armstrong, a conclusion that the jury was unable to reach.
 {¶ 27} We note that a trial court's sentencing is not evaluated under the abuse of discretion standard of review. Instead, we must determine whether clear and convincing evidence shows that the sentence imposed was contrary to law. State v. Burton, Franklin App. No. 06AP-690,2007-Ohio-1941. As previously discussed, the Supreme Court of Ohio's decision in Foster allows a trial court to impose any sentence within the statutory range for the offense for which sentence is being imposed, without making any factual findings. Thus, the trial court was not required to find that appellant committed the worst form of the offense before imposing a maximum sentence. Because the trial court imposed a sentence that was within the statutory range for the offense of having a weapon while under disability, under Foster the trial court's sentence was not contrary to law.
 {¶ 28} Consequently, appellant's second assignment of error is overruled.
 {¶ 29} In his third assignment of error, appellant argues that he received ineffective assistance of counsel due to his trial counsel's failure to object to imposition of the maximum sentence. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance fell below an objective level of reasonable representation and that the defendant suffered prejudice as a result. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674.
 {¶ 30} As discussed in our disposition of appellant's second assignment of error, the trial court had the authority to impose any sentence within the statutory range for the offense of having a weapon while under disability, including a maximum sentence. *Page 13 
Because the trial court did impose a sentence within the statutory range, any objection raised by trial counsel would not have been meritorious. As a result, appellant cannot satisfy theStrickland requirement of showing that his trial counsel's performance was deficient, and that he suffered prejudice as a result. See State v.Conway, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶ 109 (not ineffective assistance of counsel for failure to raise objection where there was no basis for objection).
 {¶ 31} Consequently, appellant's third assignment of error is overruled.
 {¶ 32} Having overruled each of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 PETREE and BROWN, JJ., concur. *Page 1