[Cite as *State v. Nickell*, 2013-Ohio-5144.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

     Plaintiff-Appellee,            :
                                   No. 13AP-336

v.                                          :       (C.P.C. No. 11CR-10-5329)

Desante L. Nickell,                         :       (REGULAR CALENDAR)

     Defendant-Appellant.           :

---

D E C I S I O N

Rendered on November 21, 2013

---

*Ron O'Brien*, **Prosecuting Attorney**, *Steven L. Taylor* **and** *Michael P. Walton*, **for appellee.**

*Todd W. Barstow & Associates*, **and** *Todd W. Barstow*, **for appellant.**

---

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Desante L. Nickell ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas, convicting him of two counts of robbery.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On September 7, 2011, Curtis Green was working as a pizza delivery driver for Pizza Hut in Grove City, Ohio. At approximately 9:30 p.m., Green left the store with two deliveries. The first delivery was to an address at the back of a two-story apartment building. Green parked his car in the lot about 15 feet from the exterior stairwell. Green exited the vehicle and headed toward the building carrying the pizza bag, his wallet, and

his cell phone. As Green approached the stairwell, he noticed a man in a bright yellow hooded sweatshirt ("hoodie") standing near the stairwell. When he reached the second floor apartment, he knocked on the door but there was no answer

{¶ 3}  As he descended the stairs, he asked the man in the hoodie if he knew the upstairs resident. When he got to the bottom of the stairs a second man, later identified as appellant, emerged from the corner of the building and walked straight toward Green. When Green asked the man if he knew the second-floor resident, the man sprayed Green with mace, hitting him in the neck.

{¶ 4}  As Green struggled to return to his vehicle, the same man sprayed him two more times, once in his face and once directly into his left eye. The two men proceeded to take Green's cell phone, $68 in cash, and the pizza bag. Green managed to make it to his next stop and the customer called police. When officers from the Columbus Police Department ("CPD") arrived at the home, they got a description of the two men from Green. Green described the man who sprayed him with mace as a light-skinned black male, in his late 20's, standing six feet to six feet one inches tall, wearing baggy jeans or jean shorts, with short dark hair and dark colored blotches on his face.

{¶ 5}  In conducting his investigation of the case, CPD Officer Arthur Hughes, prepared a computer generated photo array containing a photo of appellant and several other similar looking individuals. Another CPD officer, not assigned to the case, presented the photo array to Green and asked him if he recognized any of the individuals depicted. Green identified appellant's photo as that of the man who had sprayed him with mace and robbed him. Green indicated that he was 65 to 75 percent sure of the identification.

{¶ 6}  On October 6, 2011, the Franklin County Grand Jury indicted appellant on one count of robbery, a second degree felony; and one count of robbery, a third degree felony. A jury trial commenced on February 4, 2012 in the Franklin County Court of Common Pleas, the Honorable David E. Cain presiding. At trial, Green identified appellant as the man who had robbed him. On cross-examination, Green stated that he was 80 percent sure that appellant was the perpetrator.

{¶ 7}  The jury found appellant guilty of both counts. On March 22, 2012, Judge Cain issued a judgment entry convicting appellant of two counts of robbery. Therein,

Judge Cain merged the two convictions for purposes of sentencing and sentenced appellant to two years in prison.

## II.  ASSIGNMENT OF ERROR

{¶ 8}  Appellant filed a notice of appeal to this court assigning the following as error:

> THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF ROBBERY AS THAT VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III.  STANDARD OF REVIEW

{¶ 9}  Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime.  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 78; and *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396.

{¶ 10}  While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief.  *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386.  In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 11}  In appellant's sole assignment of error, he challenges both the sufficiency and weight of the identification evidence presented at trial.

## IV.  LEGAL ANALYSIS

### A. Sufficiency of Pretrial Identification

{¶ 12}  "When assessing the reliability of a pretrial identification, the court must consider the totality of the circumstances, including the following factors: the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his or her prior description of the criminal, the level of certainty demonstrated at the identification, and the time between the crime and the identification."  *State v. Humberto,* 196 Ohio App.3d 230, 2011-Ohio-3080, ¶ 48 (10th Dist.), citing *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

{¶ 13}  Appellant argues that Green's pretrial identification of appellant as his assailant was so equivocal that it is legally insufficient to support a conviction.  We disagree.

{¶ 14}  Officer Hughes testified that CPD Officer George Robey showed the photo array to Green and that appellant's photo was in the third position in the array.  According to Officer Hughes, he obtained the photo of appellant from the CPD database and that it was taken approximately two months prior to the robbery in this case.  Officer Hughes was not in the room when Officer Robey showed the photo array to Green.

{¶ 15}  Green was instructed to select one of the photos in the array only if he was 100 percent positive that his assailant was the person depicted in the photo.  After viewing the array, Green could not identify appellant's photo with 100 percent certainty.  When Officer Robey asked Green if he recognized anyone in the photos, he stated that he was 65 to 70 percent sure that photo No. 3 depicted his assailant.  Officer Robey noted Green's statement on the back of the photo.  (State's exhibit B.)

{¶ 16}  At trial, Green testified that although the area was dimly lit, he got a good, close range look at the face of the man who sprayed him with mace as the man approached him.  He told the responding officer that the assailant was a black male standing six feet to six feet one inches tall, wearing baggy jeans or jean shorts, with short dark hair and dark colored blotches on his face.  According to Green, when the officer showed him the photo array he selected appellant's photo and he indicated that he was 70

percent sure that the photo depicted his assailant.  On cross-examination, appellant's counsel challenged Green's initial description of appellant as having short black hair. Green explained that the assailant looked like a person who shaved his head daily but had not done so on that day; that the person had what appeared to be dark stubble on his head.  Although appellant's counsel informed Green that appellant suffers from a rare skin disease that leaves him completely hairless, Green responded that when he first examined the photo array, appellant's photo "stood out."  (Tr. 108.)

{¶ 17} Green later acknowledged that he is overly cautious about saying anything with 100 percent certainty.  (Tr. 116-17.)  In fact, when speaking of his attempt to identify the second suspect from a photo array, Green testified that he did not believe that anyone could ever be 100 percent confident of a photographic identification.  (Tr. 117.)  Green described the dark patches he observed on the face of his assailant as small oval patches. Green acknowledged that appellant did not appear to have any such patches on his face as he sat in the courtroom. Appellant admitted that he suffers from a rare skin condition known as alopecia, but he denied that the condition has caused lesions to appear on his face.

{¶ 18} Based upon the foregoing, we find that Green's pretrial identification of appellant as his assailant is legally sufficient to support a conviction. Examining such evidence in the light most favorable to the state, we conclude that a rational trier of fact could have found that the state proved, beyond a reasonable doubt, that appellant was the man who sprayed Green with mace and robbed him.

### B. Sufficiency of In-Court Identification

{¶ 19} Appellant places great emphasis on Green's apparent equivocation at trial when he was asked if his assailant was in the courtroom.  Green testified as follows:

[PROSECUTING ATTORNEY:] Mr. Green, I'm going to ask you, is the person who Maced you that night here in the courtroom today?

A. Maybe.

[PROSECUTING ATTORNEY:] Okay.  What do you mean by that?

A. I mean, it's been so long. It was September 2011, so my memory is not - - not as clear.

[PROSECUTING ATTORNEY:] Is there any person here that you think might be the person?

A. Yes.

[PROSECUTING ATTORNEY:] And who would that be?

A. The guy sitting over - - the gentleman over there.

[PROSECUTING ATTORNEY:] Can you describe what he's wearing?

A. Green shirt, striped.

[PROSECUTING ATTORNEY:] Your Honor, I'd like the record to reflect that he's indicating the Defendant, Desante Nickell.

THE COURT: So reflect.

(Tr. 90.)

{¶ 20} When Green's identification testimony was challenged by appellant's counsel, the following exchange took place:

[DEFENSE COUNSEL:] You said that the person - - you were asked whether or not the person who Maced you was here in the courtroom. And you paused, and you said, "Maybe," did you not?

A. Yeah. But I'm not going to give a hundred percent accurate, definite - - or say for a hundred percent certain that that's the guy. Like, say you are walking down the street, some guy pops into you, you get a perfect look at them. He runs right in to you. Two hour later, if that person was right there in from of you, could you say that that was that person?

[DEFENSE COUNSEL:] I'm asking the questions.

A. Okay.

[DEFENSE COUNSEL:] So, you're saying then that you're not a hundred percent certain.

A. No.

[DEFENSE COUNSEL:] And maybe this is the guy.

A. Well, I mean, I'm never a hundred percent certain, because certainty is - - there's no way to be a hundred percent certain. When you look at statistics, they say with 95 percent confidence this is accurate.

[DEFENSE COUNSEL:] Okay. So, you're saying then to us that you believe this is the person, but you're not 100 percent sure.

A. Yeah, cause I'm - -

[DEFENSE COUNSEL:] Okay.

A. There's no - - there's no possible way to be 100 certain about anything unless you have this.

(Tr. 112-13.)

{¶ 21} Green's trial testimony leaves us with the distinct impression that Green is very cautious when stating his beliefs, and that he will not fully commit to a truth if there is any possibility that he could be mistaken. R.C. 2901.05(E) defines reasonable doubt as follows:

> "Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. *Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt.* "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs.

(Emphasis added.)

{¶ 22} Consistent with the statute, the trial court instructed the jury that "it is not essential that the witness be free from doubt in the correctness of their [identification testimony]." (Tr. 206.) Based upon our review of Green's testimony, it is evident that his

in-court identification is legally sufficient to support a finding of guilt beyond a reasonable doubt, even though Green testified that he was not 100 percent positive.

### C. Manifest Weight

{¶ 23} In reviewing the manifest weight of the evidence, this court has held that, even where discrepancies exist, eyewitness identification testimony will support a conviction so long as a reasonable juror could find the eyewitness testimony to be credible. *See, e.g., State v. Taylor,* 10th Dist. No. 12AP-870, 2013-Ohio-3699, ¶ 47; *Humberto* at ¶ 12; *State v. Jordan,* 10th Dist. No. 04AP-827, 2005-Ohio-3790, ¶ 14.

{¶ 24} As noted above, Green testified that he got a good, close range look at the face of his assailant as he approached him. Green gave a reasonably detailed description of the man to the responding officer and he appeared at CPD within a few days to view a photo array. Green accurately described appellant as being of similar height but of slighter build than the man in the hoodie. In fact, when the other suspect in this case, Marvin Groves, was interviewed in his home by Officer Hughes, Groves was wearing a bright yellow hoodie. (Tr. 48.)

{¶ 25} The jury was in the best position to observe Green as he testified and to assess his credibility. Although Green described his assailant as having dark patches of skin on his face, which appellant does not, the other details described by Green are consistent with appellant's appearance. Moreover, Green's obvious distaste for stating his opinions with absolute certainty serves only to bolster his credibility in the eyes of the jurors.

{¶ 26} By contrast, appellant's alibi testimony is not particularly credible. Appellant testified that he was "pretty sure" he was at the home of Danny Wade, a friend of his father's, from around 3:00 p.m. to about 10:30 or 11:00 p.m., on September 7, 2011. (Tr. 153.) Londell Washington, appellant's father, testified that he and his son drove to an address on Hague Avenue in Columbus to visit Wade on the afternoon of September 7, 2011, but that he left the residence for some time and did not return until 10:00 p.m. or 11:00 p.m. (Tr. 156.) Wade testified that Washington and appellant arrived at his home sometime during the day, but he could not say when they left for the evening. (Tr. 177.) On cross-examination, both Wade and Washington acknowledged that they never notified

police of appellant's alibi even though they knew police had charged appellant with a robbery that occurred on the evening of September 7, 2011.  (Tr. 164, 177-78.)

{¶ 27}  A conviction should be reversed on manifest weight grounds only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.  Moreover, " 'it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.' " *State v. Brown*, 10th Dist. No. 02AP-11, 2002-Ohio-5345, ¶ 10, quoting *State v. Long*, 10th Dist. No. 96APA04-511 (Feb. 6, 1997).

{¶ 28} Based upon totality of the evidence, we find that the State's identification evidence is much stronger than appellant's alibi evidence, and that the jury was reasonably justified in believing Green and disbelieving the alibi testimony.  There being no other evidence in appellant's favor, it is clear that the jury did not lose its way in assessing the weight and credibility of the evidence.  Thus, appellant's convictions are not against the manifest weight of the evidence

## V.  DISPOSITION

{¶ 29} Based upon the foregoing, we hold that there is sufficient evidence to support the convictions and that the convictions are not against the manifest weight of the evidence.  Appellant's sole assignment of error is overruled.  Having overruled appellant's sole assignment of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and TYACK, J., concur.

————————————