[Cite as *State v. Williams*, 2017-Ohio-7898.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-725 |
| v. | : | (C.P.C. No. 15CR-3687) |
| Darius A. Williams, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

### D E C I S I O N

#### Rendered on September 28, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee. **Argued:** *Laura A. Swisher*.

**On brief:** *Jeremy A. Roth*, for appellant. **Argued:** *Jeremy A. Roth*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Darius A. Williams, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm appellant's convictions but remand the matter for the trial court to properly impose post-release control.

### I. Factual and Procedural Background

{¶ 2} On July 29, 2015, a Franklin County Grand Jury indicted appellant with two counts of aggravated robbery in violation of R.C. 2911.01, four counts of robbery in violation of R.C. 2911.02, and two counts of having a weapon while under disability in

violation of R.C. 2923.13.  Each count also contained a three-year firearm specification pursuant to R.C. 2941.145(A).  The counts arose from the armed robberies of two convenience stores in Franklin County.  Appellant entered a not guilty plea and proceeded to a jury trial.

{¶ 3}   At that trial, one employee from each of the stores testified.  Ben Stacy, who was working at a United Dairy Farmers ("UDF") store on North High Street at 5:00 a.m. on May 21, 2015, testified that a man brought a bag of chips up to the front counter and gave him a $5 bill to pay for it.  As Stacy gave the man his change, the man pointed a gun at him and asked for money.  Stacy gave the man money and then the man left the store.  Stacy testified that it is UDF's policy for a person being robbed to focus on the person's face, so Stacy testified that he looked at the man's face to get a good description of him.  Stacy identified appellant as the person who robbed the UDF store.

{¶ 4}   Irfan Mehdi, the owner of YBB Market on the north side of Columbus, testified that his store was robbed on May 20, 2015.  On that day, a man came to the front counter with some items to buy.  Mehdi began putting the items in a bag when the man pulled a gun out and told Mehdi to give him the money.  (June 1, 2016 Tr. Vol. 3 at 15.)  Mehdi gave the man money and then the man left the store, without the bag of items.  Mehdi testified that he got a good look at the man's face before he left.  *Id.* at 17.  The police came to the store and took the items that the man brought to the front counter.  Fingerprints were recovered from some of those items that matched appellant's fingerprints.  Mehdi identified appellant as the man who robbed the YBB Market.

{¶ 5}   Videos of both robberies were played to the jury.

{¶ 6}   The jury found appellant guilty of two counts of aggravated robbery and two counts of robbery and the attendant firearm specification for each of those counts.  Additionally, appellant elected to have the weapons under disability counts, as well as the firearm specifications attendant to those counts, tried to the trial court.  The trial court found him guilty of all those counts and specifications.[1]  As a result, the trial court sentenced appellant to a total prison term of 24 years.

## II. Appellant's Appeal

{¶ 7}   Appellant appeals and assigns the following errors:

---

[1] Two robbery counts were dismissed by the trial court.

[1.] The trial court erred when it entered judgment against Appellant when there was not sufficient evidence to support the guilty verdicts and convictions of Appellant, in violation of his due process rights under the Ohio and United States Constitutions.

[2.] The trial court erred when it entered judgment against Appellant when the guilty verdicts returned by the jury were against the manifest weight of the evidence in violation of his due process rights under the United States and Ohio Constitutions.

[3.] The trial court erred when it improperly advised Appellant of the statutory requirements of post release control rendering the sentence void.

## A. First and Second Assignments of Error—The Weight and Sufficiency of the Evidence

{¶ 8} In these assignments of error, appellant argues that his convictions are not supported by sufficient evidence and are also against the manifest weight of the evidence. We disagree.

{¶ 9} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law. *Id.* In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001). In this inquiry, appellate courts do not assess whether the state's evidence is to be believed, but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency

of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime").

{¶ 10} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins* at 387. Although there may be sufficient evidence to support a judgment, a court may nevertheless conclude that a judgment is against the manifest weight of the evidence. *Id.* When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 11} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the trier of fact's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55. *See also State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus (credibility determinations are primarily for the trier of fact).

## 1. The Robbery Convictions

{¶ 12} Appellant argues that his robbery convictions are not supported by sufficient evidence and are against the manifest weight of the evidence because neither witness that identified appellant as the robber could recall that he had tattoos on his hands, even though they were very close to his hands at the time of the robberies. The witnesses also did not include the fact that the robber had tattoos on his hands in either of their descriptions to police. At trial, both employees testified that they saw appellant had tattoos on his hands as he stood before them in the courtroom. Appellant's argument is, in essence, a manifest weight argument that the identifications were not reliable or credible.[2] We disagree.

{¶ 13} " 'The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury.' " *State v. Rudd*, 8th Dist. No. 102754, 2016-Ohio-106, ¶ 73, citing *State v. Roper*, 9th Dist. No. 20836, 2002-Ohio-7321, ¶ 55, quoting *Foster v. California*, 394 U.S. 440, 443 (1969). Accordingly, in reviewing the manifest weight of the evidence, this court has frequently held that eyewitness identification testimony will support a conviction so long as a reasonable juror could find the eyewitness testimony to be credible. *State v. Nickell*, 10th Dist. No. 13AP-336, 2013-Ohio-5144, ¶ 23, citing *State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, ¶ 12; *State v. Jordan*, 10th Dist. No. 04AP-827, 2005-Ohio-3790, ¶ 14.

{¶ 14} Initially, we note that it was not even established that appellant had tattoos on his hands at the time of these robberies. No evidence was presented to prove this fact. Although appellant showed his hands to the witnesses at trial, the videos of each robbery do not clearly show that appellant had tattoos on his hands at the time of the robberies. Additionally, the prosecutor also noted that there would be no way to know when appellant got his hand tattoos because he was not arrested until sometime after these robberies. Regardless, both witnesses testified that they were able to get a good look at the perpetrator during the robbery and both stated they were not focused on the perpetrator's hands. Both victims testified that they were focused on the perpetrator's

---

[2] Indeed, eyewitness identification testimony is sufficient to support a conviction. *State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, ¶ 10 (10th Dist.).

face or the gun. Stacy testified that part of UDF's protocol for a robbery is to be able to provide a good description of the perpetrator to authorities by focusing on the person's face. (May 31, 2016 Tr. Vol. 2 at 32.) Mehdi added, when asked if he told the police about any tattoos on the man's hands, that he was not paying attention to his hands "at that time, I was just looking at the gun." (Tr. Vol. 3 at 31.) The witnesses' testimony was also largely consistent with the events that were seen on the videos of the robberies, and the jury was able to see for itself the person on the screen and could compare that person with the person on trial for these events. Additionally, appellant's fingerprints discovered on items that he brought to the front counter of the YBB Market lends more credibility to Mehdi's identification of appellant as the person who robbed his store. All of this evidence would allow a reasonable juror to find the eyewitness testimony identifying appellant as the person who robbed the stores credible. Accordingly, the jury did not lose its way by finding appellant guilty of the convenience store robberies. Appellant's robbery convictions are not against the manifest weight of the evidence.

### 2. The Weapon Under Disability Count and the Firearm Specifications-Did Appellant have an Operable Firearm?

{¶ 15} Appellant also argues that the state did not present sufficient evidence to prove that he had an operable firearm during the two robberies. We disagree.

{¶ 16} R.C. 2941.145(A), the firearm specification for which appellant was found guilty, requires the imposition of a three-year mandatory prison term upon an offender that "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Similarly, having a weapon while under disability in violation of R.C. 2923.13 prohibits certain people from knowingly acquiring, having, carrying, or using any firearm. A firearm is defined for purposes of both of these statutes as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). To support these convictions, the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense. *Thompkins* at paragraph one of the

syllabus. Appellant argues that the state failed to present sufficient evidence that the gun used in the robberies was operable. We disagree.

{¶ 17} Police did not find the gun that was used during these robberies. It is not necessary, however, for the state to produce the gun or offer direct, empirical evidence that the gun is operable. *State v. Whiteside*, 10th Dist. No. 07AP-951, 2008-Ohio-3951, ¶ 17. Indeed, R.C. 2923.11(B)(2) provides that when determining whether a firearm is operable, "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." Proof of operability may be established through the testimony of lay witnesses who were in a position to observe the weapon and the surrounding circumstances. *State v. Williams*, 10th Dist. No. 16AP-540, 2017-Ohio-5598, ¶ 21. Where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable. *Thompkins* at 384. This court has previously held that circumstantial evidence can support a finding that a firearm was operable, including explicit or implicit threats made by the person in control of the firearm. *State v. Dutton*, 10th Dist. No. 09AP-365, 2009-Ohio-6120, ¶ 8. Even actions alone, without verbal threats, may constitute sufficient circumstances to establish the operability of a firearm. *Id.* at ¶ 9.

{¶ 18} Here, the jury was shown the video of each robbery and could see the gun in the videos for themselves. Additionally, both witnesses testified that appellant displayed a gun during the robbery. Stacy described the gun appellant pointed at him during the UDF robbery as a small caliber gun, maybe a .38. (Tr. Vol. 2 at 29.) The gun was only 2 to 3 feet away from him. Stacy thought the gun was real and that it even appeared to have been used before. (Tr. Vol. 3 at 31-32.) Stacy testified that he was familiar with guns and that he has hunted and attended gun shows before this incident. *Id.* at 31. Similarly, Mehdi testified that the gun appellant pointed at him was only a few feet away and that it appeared to be a real gun. *Id.* at 16. It did not appear to be plastic and it did not have an orange tip on it. *Id.* Both witnesses testified that appellant pointed the gun at them while demanding money. All of this evidence is sufficient to allow a reasonable juror to conclude that appellant's gun was operable at the time of the robberies. *Id.* at ¶ 9 (citing

cases that found sufficient evidence of operability where defendant pointed a gun at another while demanding money).

### 3. Conclusion

{¶ 19} Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Accordingly, we overrule appellant's first and second assignments of error.

## B. Third Assignment of Error—The Imposition of Post-Release Control

{¶ 20} In this assignment of error, appellant argues that the trial court did not properly impose post-release control. The trial court stated that appellant was subject to three years of post-release control when five years of post-release control is mandatory for these convictions. The state concedes this error and we agree. Accordingly, we sustain appellant's third assignment of error and remand the matter for the trial court to properly impose post-release control.

## III. Conclusion

{¶ 21} For the following reasons, we overrule appellant's first and second assignments of error and sustain his third assignment of error. Accordingly, we affirm appellant's convictions but remand the matter to the trial court for the limited purpose of properly imposing post-release control.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

TYACK, P.J., and HORTON, JJ., concur.

———————————