OPINION
{¶ 1} Deryk C. Bankston, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court found him guilty, pursuant to a jury verdict, of five counts of aggravated robbery with gun specification, in violation of R.C. 2911.01, which is a felony of the first degree; five counts of kidnapping with gun specification, in violation of R.C. 2905.01, which is a felony of the first degree; and aggravated burglary with gun specification, in violation of R.C. 2911.11, which is a felony of the first degree. *Page 2 
 {¶ 2} On April 22, 2007, sisters Rachel and Terra Baker, Brandon Cherup, Timothy Bobo, and Danial Fike were at an apartment smoking marijuana. Appellant approached the front door of the apartment with two other men, one African-American and one "Arabic," and asked if they could buy some marijuana. Cherup, who recognized appellant as a former co-worker, told appellant they had no extra marijuana, but he could contact his drug dealer to get some for him. The three men left, but returned a few minutes later. The witnesses testified variously that two of the men or all three of them brandished guns. The three men forced Cherup, Bobo, and Fike by gunpoint into the living room, while appellant forced the two females, Terra and Rachel, into a bedroom. After threatening the victims, the three men left the apartment with money and property belonging to the victims.
 {¶ 3} On May 4, 2007, appellant was charged with five counts of aggravated robbery with gun specification, five counts of kidnapping with gun specification, aggravated burglary with gun specification, and carrying a concealed weapon. A trial was held May 16, 2008, and appellant was found guilty of all counts except for the carrying concealed weapon charge, for which a nolle prosequi was entered upon application of the State of Ohio, appellee-plaintiff. A sentencing hearing was held July 9, 2008. On July 11, 2008, the trial court issued a judgment, finding appellant guilty of the charges as found by the jury and sentencing appellant to 12 years incarceration. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
 [I.] ALL OF THE WITNESSES['] CREDIBILITY WERE SUSPECT BY THEIR ADMITTED USE OF MARIJUANA ON THE DATE OF THE ALLEGED OFFENSE[] *Page 3 
 [II] THE TRIAL COURT ERRED BY REFUSING A JURY INSTRUCTION RELATED TO 2905.01(C)[.]
 {¶ 4} Appellant argues in his first assignment of error that the credibility of all of the witnesses was suspect, given their use of marijuana on the date of the offenses. Specifically, appellant argues that Cherup, Fike, Bobo, Rachel and Terra Baker were not credible based upon their inconsistent testimony relating to who initiated the robbery and whether appellant possessed a gun. We first note that appellant does not frame either his assignment of error or his argument in terms of a manifest weight of the evidence challenge or insufficiency of the evidence challenge. Regardless, in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime. State v. Woodward, Franklin App. No. 03AP-398,2004-Ohio-4418, at ¶ 16.
 {¶ 5} In addressing a manifest weight of the evidence argument, we are permitted to consider the credibility of the witnesses. See State v.Martin (1983), 20 Ohio App.3d 172, 175. However, in conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Thus, a reviewing court must defer to the factual findings of the jury regarding the credibility of the witnesses. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Concerning the issue of assessing witness credibility, the general rule of law is that "[t]he choice between credible witnesses and their conflicting testimony rests solely with the *Page 4 
finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. Indeed, the fact finder is free to believe all, part or none of the testimony of each witness appearing before it. Hill v.Briggs (1996), 111 Ohio App.3d 405, 412. If evidence is susceptible to more than one construction, reviewing courts must give it the interpretation that is consistent with the verdict and judgment.White v. Euclid Square Mall (1995), 107 Ohio App.3d 536, 539. Mere disagreement over the credibility of witnesses is not sufficient reason to reverse a judgment. State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, at ¶ 24.
 {¶ 6} It is in the face of this extremely difficult burden that we examine the credibility of the witnesses. Appellant first asserts that the jury should not have believed the testimony of any of the victims because they admitted to smoking one to three marijuana "blunts." Without citation, appellant claims the effects of marijuana use are loss of short-term memory and impairment of judgment, attention, and cognitive skills. Although appellant cites several instances of inconsistent testimony among the victims, as will be discussed below, the inconsistencies in the evidence and the usage of marijuana by the witnesses were before the trial court for its consideration, and, as explained above, we must give great deference to the fact finder's determination regarding the credibility of the witnesses, even under circumstances such as the present case where marijuana use is involved. See, e.g., State v. Whiteside, Franklin App. No. 07AP-951,2008-Ohio-3951, at ¶ 15 (refusing to second-guess the jury's credibility determination when inconsistencies and marijuana use were before the trial court to consider). See, also, State v. Lowery,160 Ohio App.3d 138, 2005-Ohio-1181, at ¶ 25 (the fact that the witnesses were inclined to smoke marijuana and had done so on the day of *Page 5 
the offenses were factors to be considered when assessing their credibility, but did not, without more, render their testimony unworthy of belief); State v. Dover, Stark App. No. 2007-CA-00140,2008-Ohio-1071, at ¶ 55 (although it was argued that the victim was not credible because he was under the influence of marijuana, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact); State v. Gilliam, Mahoning App. No. 03-MA-176,2005-Ohio-2791, at ¶ 53 (court would not second-guess the jury's credibility determinations where the witnesses testified as to how much they had to drink, if they smoked marijuana, and if they took any pills on the night in question, so the jury was able to take these facts into consideration when weighing those witnesses' testimony); State v.Scott, Mahoning App. No. 02-CA-215, 2004-Ohio-5117, at ¶ 56 (refusing to second-guess the jury's credibility determination when the jury had all of the information before it regarding the witness's use of a "large amount" of marijuana the night in question, and were the best judges of the witness's credibility). Furthermore, city of Columbus Police Officer Michael Knudsen testified that the victims all spoke coherently to him and were able to provide him relevant information. Terra Baker also testified that, although she smoked marijuana that day, she was not so high that she did not know what was happening, she remembered the incident, and she was able to verbalize to police what she saw. Bobo also stated that he was not so high that he could not remember what happened that day. Therefore, we cannot find the jury lost its way in failing to discount all of the witnesses' credibility because they had admittedly been smoking marijuana at the time of the offenses.
 {¶ 7} Appellant next argues that the credibility of the witnesses was suspect because they all gave conflicting testimony about who "initiated" the robbery and whether *Page 6 
appellant possessed a gun. Appellant admits he was present when the offenses occurred, but that he was merely a bystander and had been forced to participate. In support of his contention that the testimony was inconsistent, appellant points out that Cherup testified he thought appellant initiated the robbery by stating, "[l]et's do this"; Rachel Baker stated she did not hear any of the perpetrators say anything; Terra Baker testified the assailants entered the apartment without saying anything; Fike testified only that one of the assailants came in and put a pistol in his face; and Bobo testified that appellant threatened him.
 {¶ 8} Cherup testified that, at about 4:00 p.m., he saw two black men near his apartment door via a closed-circuit monitor inside the apartment. When he walked outside to see who they were, he approached a third person, appellant. He knew appellant from working with him in 2005. Appellant asked him if he had a half-ounce of marijuana. One of the other two men was possibly "Arabic" with tattoos on his neck. Cherup told appellant they did not have any more marijuana, but that he could get more from his drug dealer, so appellant gave him his phone number. Five minutes later, appellant approached him in front of the apartment again, with the two other men behind appellant. Appellant asked him a few questions about their mutual place of employment. Cherup testified that appellant then screamed, "[l]et's do this," and the "Arabic" individual pointed a silver pistol in his face and told him to go inside the apartment. All three of the perpetrators entered the apartment with Cherup, and one of the three assailants pointed a revolver in Fike's face. Of the assailants, Cherup testified, "they all had guns."
 {¶ 9} Rachel Baker testified that, five minutes after appellant and the other two men approached Cherup outside the apartment, one of them pointed a gun at Cherup, *Page 7 
and the three perpetrators, including appellant, forced Cherup and Rachel inside the apartment and closed the door behind them. Inside the apartment, "they all had their guns drawn," and "[t]hey proceeded to tell us to empty out our pockets." She specifically stated all three had guns. She testified that appellant and another of the men escorted her and her sister to the back bedroom. She stated appellant told her he did not want to hurt her, but appellant had a gun to her sister's back. She saw appellant take jewelry from a jewelry box in the bedroom.
 {¶ 10} Terra Baker testified that, about five minutes after the three men initially left from outside the apartment, they returned. All three had guns and came into the apartment. The three perpetrators were pointing the guns at them and telling them to give them their money and marijuana. Two of the men forced her and her sister to go to a back room. She testified that all three men entered the apartment together and it sounded like they left the apartment together, although she was in the back room still and could not actually see them leave.
 {¶ 11} Fike testified that, after the first encounter with the three men, they came back to the apartment five minutes later. He "believed" all three of the perpetrators had guns. He stated while two of the perpetrators stayed with the males, appellant took Terra and Rachel to a back room. The other two men did not direct appellant to take the two females to the back room. He stated that all three men arrived and left together both times they were at the apartment.
 {¶ 12} Bobo testified that, after the three men returned to the apartment, one of them put a gun to the back of Cherup's head and led him into the apartment, and appellant followed the man with the gun inside the apartment. Bobo stated that, once *Page 8 
appellant was inside the apartment, he stated, "[a]ny of you guys move, I'm going to start socking you niggers." Bobo did not see appellant with a gun, but the other two men had guns. He stated appellant and one of the other men then both escorted the two females to a back bedroom. Bobo testified that all of the perpetrators arrived and left together, and neither of the other two perpetrators forced appellant to do any of the acts.
 {¶ 13} We find that any inconsistencies in the testimony of the above witnesses were insignificant and were not so great as to demand a new trial. As to who "initiated" the robbery, the testimony of all of the witnesses was clear that appellant directly and voluntarily participated in the robbery and kidnapping along with the other two men. All of the witnesses testified that appellant entered the apartment with the other two perpetrators, and all three left together. All of the witnesses testified that appellant, along with the other men, demanded money and drugs. All of the witnesses also testified that appellant acted voluntarily and was not forced to participate by the other two men. The witnesses were also consistent that appellant forced Terra and Rachel into a back bedroom, and Terra and Rachel stated they were not permitted to leave. Furthermore, Cherup specifically testified that appellant screamed, "[l]et's do this," before the three perpetrators entered the apartment. Rachel stated that appellant personally took jewelry from the bedroom. Bobo testified appellant stated, "[a]ny of you guys move, I'm going to start socking you niggers." Some discrepancies in the testimony are reasonable. For example, it is conceivable that none of the other witnesses, besides Cherup, would have heard appellant say, "[l]et's do this," as the other witnesses were still inside the apartment. Therefore, because the witnesses were in agreement on the major facts surrounding how the incident was "initiated," and the differences in their testimony was *Page 9 
minor on this point, we cannot find the jury's credibility determination was in error in this respect.
 {¶ 14} As to whether appellant possessed a gun, appellant claims the witnesses' testimony was conflicting and they were confused on this point. Appellant contends Cherup testified the "Arabic" person had a gun; Rachel and Terra Baker testified all three of the assailants had a gun; Fike testified he was not certain how many of the assailants had a gun; and Bobo testified appellant did not have a gun. Initially, we find appellant's summary of the various testimonies on this issue is patently inaccurate. Cherup, Rachel, and Terra all specifically testified all three assailants had guns, while Fike "believed" all three had guns. Contrary to appellant's claim, Bobo was the only witness to state that appellant did not possess a gun, and even his testimony on this point was uncertain at trial, even though he told the investigating officer at the time that appellant did not have a gun.
 {¶ 15} Notwithstanding, we cannot say that Bobo's testimony was enough to discount the testimony of the other four witnesses, who all agreed appellant possessed a gun. The jury apparently chose to believe Cherup, Rachel, Terra, and Fike, and not believe Bobo on this issue of fact, and appellant has given us no reason to disturb that finding. The jury's credibility determination, in this respect, did not create a manifest miscarriage of justice. For these reasons, appellant's first assignment of error is overruled.
 {¶ 16} Appellant argues in his second assignment of error that the trial court erred when it refused to give a jury instruction related to R.C. 2905.01(C). Specifically, appellant argues that, under R.C. 2905.01(C), if a kidnapper releases his victim unharmed in a safe *Page 10 
place, the offense of kidnapping is reduced from a first-degree felony to a second-degree felony. The provision in R.C. 2905.01(C) that provides for the reduction from a first-degree felony to a second-degree felony "if the offender releases the victim in a safe place unharmed" is a circumstance the establishment of which mitigates a defendant's criminal culpability. This not an element of the crime of kidnapping, but it is in the nature of an affirmative defense; therefore, the defendant is required to plead and prove the defense. State v.Leslie (1984), 14 Ohio App.3d 343, 345. In order to find a defendant guilty of kidnapping, pursuant to R.C. 2905.01, there is no requirement on the part of the state to allege or establish that the defendant failed to release the victim in a safe place unharmed. Id. If, at trial, the defendant puts forth any evidence tending to establish that the victim was released in a safe place unharmed, the court is required to submit this issue to the jury under proper instructions. Id.
 {¶ 17} However, a review of both the record and the transcripts from trial clearly indicates the trial court, in fact, instructed the jury regarding this affirmative defense. The instructions read to the jury by the trial court, as well as the written jury instructions, both instructed the jury on the "safe place unharmed" mitigating circumstance and specifically delineated such with regard to each victim separately. The jury also made specific findings that the victims were not released in a safe place unharmed on each of the five separate jury verdict forms. Therefore, because the jury was, in fact, instructed with regard to the "safe place unharmed" mitigating circumstance found in R.C. 2905.01, and it is apparent that the jury made a determination on this factor, appellant's second assignment of error must be overruled. *Page 11 
 {¶ 18} Accordingly, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 McGRATH and TYACK, JJ., concur. *Page 1