[Cite as *Columbus v. Asomani*, 2017-Ohio-812.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-255 |
| v. | : | (M.C. No. 2015 ERB 073705) |
| Eric Asomani, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on March 7, 2017

---

**On brief:** *Richard C. Pfeiffer, Jr.*, City Attorney, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce.*

---

APPEAL from the Franklin County Municipal Court

SADLER, J.

{¶ 1} Defendant-appellant, Eric Asomani, appeals from the judgment entry of the Franklin County Municipal Court finding appellant guilty of violating former Columbus General Code 590.02(a)(3) and sentencing him to a $100 fine plus court costs. For the following reasons, we affirm the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In July 2014, plaintiff-appellee, City of Columbus, enacted laws regulating peer-to-peer transportation network companies, such as Uber, including licensing

requirements codified in Chapter 590 of the Columbus General Code. Pertinent to this appeal, Columbus General Code 590.02(a)(3) provided:

> No person shall solicit, arrange, dispatch, drive, operate, or otherwise be in physical control of any peer-to-peer transportation network vehicle for the purpose of carrying passengers for hire, gift, donation, or other consideration unless:
>
> * * *
>
> The current decal issued by the License Section is clearly and properly displayed on the passenger side of the front and rear windshield of the approved vehicle.

Under the penalties section of the law, Columbus General Code 599(a), a violation of Columbus General Code 590.02(a)(3), was classified as a misdemeanor of the first degree.

{¶ 3} On September 16, 2015, a complaint was filed alleging that appellant violated Columbus General Code 590.02(a)(3). A second count of the complaint, which alleged that appellant violated Columbus General Code 590.11(B)(5) by soliciting passengers, is not at issue in this appeal.[1]

{¶ 4} On December 22, 2015, the Ohio General Assembly enacted legislation regulating transportation network companies, stating that the regulation of such companies was a matter of general statewide interest that required statewide legislation. As such, the legislation stated an intent to preempt any local ordinance adopted to regulate transportation network companies. R.C. 4925.09(A)(1).

{¶ 5} Before the statewide legislation took effect, Columbus City Council enacted legislation that repealed and replaced various sections of its code in order to bring the Columbus City Code in line with state legislation regulating transportation networks. The city utilized an emergency measure procedure that resulted in the city's legislation taking effect on the date of passage, January 25, 2016, rather than the normal effective date 30 days after the date of passage. As a consequence, Columbus General Code 590.02(a)(3) and 599(a) were repealed effective January 25, 2016, and no new legislation was enacted by the city to penalize the same conduct.

---

[1] The trial court found appellant not guilty of this offense.

{¶ 6}   Appellant's case proceeded, and no motion or objection was put forward to the trial court to challenge his continued prosecution after the repeal of Columbus General Code 590.02(a)(3) and 599(a).   After several continuances, a bench trial was ultimately held on March 7, 2016.   At trial, in his opening statement, defense counsel mentioned that one "peripheral issue" is that "this law is no longer on the books.  [J]ust done away with."  (Tr. at 7.)  Defense counsel did not make any corresponding objection or motion and did not otherwise frame an argument at any point during trial based on this statement.

{¶ 7}   Appellee then called its first and only witness, Jennifer Shicks, to testify on behalf of the prosecution.  Shicks, a licensing officer with the City of Columbus Division of Public Safety Support Services, testified that on September 12, 2015, she was on duty "working the Ohio State football game for commercial sales enforcement, Uber enforcement and vehicle for hire taxi enforcement."  (Tr. at 8.)  She was wearing a city-issued sweatshirt with a city emblem and had a badge and ID card on a chain around her neck.  According to Shicks, her attention was drawn to appellant because "[h]e had an Uber decal hanging from his rearview mirror, but did not have the city-issued decals that showed it was a licensed Uber in the front and rear passenger window on the passenger side." (Tr. at 10.)  Shicks described a city-issued decal as a "four by four square, colored," and described the conditions at the time as daylight with clear and dry weather.  (Tr. at 10.)

{¶ 8}   According to Shicks, she approached appellant's vehicle and stood within two feet of the passenger side window.  Appellant rolled the window down and asked if she needed a ride.  She identified herself as an officer and asked to see his Uber ID card, which was visible inside of the vehicle.  When appellant did not comply, Shicks attempted to retrieve the ID card, but, while her arm was still in the window, appellant drove away.  The interaction took approximately 30 seconds.  Later that day, Shicks and her partner, who was also present at the scene, were able to contact appellant through his license plate information.

{¶ 9}   The city rested its case, and appellant made a Crim.R. 29 motion asking the court to find the city presented insufficient evidence to prove the crimes as charged.  The trial court denied appellant's motion, and appellant then testified in his own defense.

{¶ 10}  Appellant is a medical records clerk who, on September 12, 2015, was an Uber driver licensed with the city of Columbus.[2]  On his way to pick up a passenger at the Ohio State football stadium, appellant stopped at a stoplight at the crowded intersection of Lane Avenue and High Street.  According to appellant, when Shicks waived at his vehicle he rolled down his window and asked if she was his rider.  He did not see her badge.  Through the window Shicks attempted to grab his ID, which also had his key to his apartment, and, after about 20 to 30 seconds, he had to pull away because the light turned green and cars were honking from behind him.

{¶ 11}  According to appellant, he had purchased the required city-issued decals and displayed them "[o]ne in the front, one in the rear."  (Tr. at 38.)  Appellant further testified that defense exhibit A, a photograph depicting the rearview of his vehicle, and exhibit B, a "close capture of the same picture" as in exhibit A, are true and accurate copies of how the rear of his vehicle looked on September 12, 2015.  (Tr. at 39.)  Appellant testified that the decal is not visible in exhibit A, but the decal is visible in the exhibit B close-up photograph "but it's not that clear" because his rear window is "very tinted, so it's become hard to see through."  (Tr. at 39.)  According to appellant, after the incident, he went to the police officers, and the officers took his Uber license and decals.  On cross-examination, appellant confirmed that he did not have a photograph of the front window of his vehicle.

{¶ 12}  Defense counsel did not admit the exhibits, rested its case, and renewed its Crim.R. 29 motion.  The trial court again overruled the motion.  In his closing argument, defense counsel argued that appellant was not guilty under the requirements of the city ordinances.  At the close of the trial, and by judgment entries dated that same day, March 7, 2016, the trial court found appellant guilty of violating Columbus General Code 590.02(a)(3) and sentenced appellant to a financial sanction of $100 plus court costs.

---

[2] Appellant testified that he is no longer an Uber driver.

After appellant's conviction, on March 23, 2016, the statewide legislation regulating transportation network companies went into effect.

{¶ 13} Appellant filed a timely appeal to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellant presents three assignments of error:

[1.] While Appellant's case was pending the Columbus City Council on January 27, 2016 enacted Ordinance 0249-2016 which repealed in its entirety Columbus City Code (C.C.C.) 590.02(a)(3) (prohibitions regarding decal display for peer-to-peer transportation network vehicles) and 590.99(a) (penalties for violating 590.02(a)(3)). The application of C.C.C. 101.05 ("Effect of repeal of ordinances") cannot control because it plainly conflicts with City Council's intent to immediately remove peer-to-peer decal offenses as criminal acts within the City of Columbus. Appellant's conviction for violating C.C.C. 590.02(a)(3) and the accompanying sentence must therefore be vacated.

[2.] Inasmuch as Appellant's conviction for violating C.C.C. 590.02(a)(3) was not supported by sufficient evidence it must be set aside and he must be discharged from these proceedings.

[3.] The Appellant's conviction must be set aside because it was against the manifest weight of the evidence (*passim*).

## III. DISCUSSION

### A. First Assignment of Error

{¶ 15} Under the first assignment of error, appellant contends that his conviction and sentence must be vacated because the ordinance that he was charged with violating, former Columbus General Code 590.02(a)(3), and the corresponding sentencing ordinance, was repealed while his prosecution was pending. For the following reasons, we disagree.

{¶ 16} As a preliminary matter, appellee asserts that appellant waived this issue. Generally, " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the

trial court.' " *State v. Awan*, 22 Ohio St.3d 120, 122 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus. However, an appellate court has discretion to recognize "[p]lain errors or defects affecting substantial rights" although they were not raised to the trial court. Crim.R. 52(B). "To prevail under this standard, the defendant must establish that an error occurred, it was obvious, and it affected his or her substantial rights." *State v. Spaulding*, ___ Ohio St.3d ___, 2016-Ohio-8126, ¶ 64, citing Crim.R. 52(B) and *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002) (an error affects substantial rights only if it "affected the outcome of the trial"). "We take '[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Spaulding* at ¶ 64, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 17} In this case, it is undisputed that although defense counsel mentioned that the law was "no longer on the books," defense counsel did not, by motion or otherwise, argue against appellant's conviction and sentence due to the repeal of the charged statute. (Tr. at 7.) In his brief on appeal, appellant does not argue that trial counsel raised the issue of the repeal at trial but, rather, asserts that the issue inherently involves whether the trial court acted without subject-matter jurisdiction, which may be raised at any time or, alternatively, that appellant's conviction rises to the level of plain error under Crim.R. 52(B). Considering the above, we find that appellant waived the issues presented in his first assignment of error, except to the extent that they relate to subject-matter jurisdiction and the plain error doctrine as discussed below.

{¶ 18} We will first address appellant's argument that the city's repeal of the pertinent laws while his prosecution was pending deprived the trial court of subject-matter jurisdiction over his case. The Supreme Court of Ohio described subject-matter jurisdiction of a municipal court in *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880. The *Mbodji* court stated:

> The term "jurisdiction" refers to the court's statutory or constitutional authority to hear a case. *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11. The concept encompasses jurisdiction over the subject matter of a case as well as jurisdiction over the person. *Id.* Because subject-matter jurisdiction involves a court's power to hear a

> case, the issue can never be waived or forfeited and may be raised at any time. *Id.*

*Id.* at ¶ 10.

{¶ 19} "Municipal courts are created by statute, R.C. 1901.01, and their subject-matter jurisdiction is also set by statute." *Id.* at ¶ 11. Per R.C. 1901.20(A)(1), a municipal court "has jurisdiction to hear misdemeanor cases committed within its territory and has jurisdiction over the violation of any ordinance of any municipal corporation within its territory." Thus, pertinent to this case, the Franklin County Municipal Court has subject-matter jurisdiction over misdemeanor cases committed within Franklin County and violations of city of Columbus ordinances defining criminal misdemeanors. R.C. 1901.20(A); R.C. 1901.02(A)(5) and (B); *Mbodji* at ¶ 11.

{¶ 20} To invoke the subject-matter jurisdiction of the municipal court, a plaintiff must file a complaint that is valid under Crim.R. 3. *Id.* at ¶ 12-13 and paragraph one of the syllabus ("A complaint that meets the requirements of Crim.R. 3 invokes the subject-matter jurisdiction of a trial court."). Crim.R. 3 states:

> The complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths.

{¶ 21} Thereafter, a defendant must raise before trial any challenge to either the validity of the complaint or a defect in the institution of the prosecution that is not a "jurisdictional barrier." *Mbodji* at ¶ 19; Crim.R. 12(C). The failure of the defendant to raise such defenses or objections constitutes a waiver. Crim.R. 12(H); *Mbodji* at ¶ 18-19 (finding that the defendant's argument regarding the trial court's lack of subject-matter jurisdiction based on a complaint alleged to be procedurally defective under R.C. 2935.09 was waived where the defendant failed to file a Crim.R. 12(C) motion prior to trial). However, where the flaw in the complaint or indictment is a jurisdictional barrier, such as failing to charge a valid criminal offense, the trial court is divested of subject-matter jurisdiction and any resulting conviction is void. *State v. Chessman*, 188 Ohio App.3d 428, 2010-Ohio-3239, ¶ 7 (2d Dist.) (finding that trial court should have granted

appellant's motion to dismiss for a lack of subject-matter jurisdiction because the statute charged in the indictment had no accompanying statutory penalty, and, therefore, the indictment did not charge a criminal offense).

{¶ 22} Here, appellant does not argue that the complaint as initially filed was invalid, and, on our own review, we find that the complaint in this case was valid under Crim.R. 3. The complaint is made on oath and states the numerical designation of the applicable ordinance and the essential facts constituting the offense charged. Thus, unlike *Mbodji*, subject-matter jurisdiction of the trial court was properly invoked at the outset of the case. *Mbodji* at paragraph one of the syllabus.

{¶ 23} Even so, appellant contends in essence that the complaint became invalid on the city's repeal of the ordinance charged in the complaint, thereby divesting the trial court of subject-matter jurisdiction at that later point in time. We disagree.

{¶ 24} At common law, when a criminal statute was repealed, pending prosecutions of that crime were "abated," meaning "there could be no further criminal prosecution for its violation." *Landen v. United States*, 299 F. 75, 78 (6th Cir.1924); *Bradley v. United States*, 410 U.S. 605, 607-08 (1973); *State v. Raynovich*, 7th Dist. No. 12 MA 65, 2014-Ohio-2246, ¶ 8. However, governing bodies may abrogate the common law by expressing their general intent that a repeal of a criminal statute shall not affect pending prosecutions. *Bradley*; *Raynovich*; *State v. Lawrence*, 74 Ohio St. 38, 46-47 (1906). As stated by *Summit Beach, Inc. v. Glander*, 153 Ohio St. 147, 150 (1950), quoting 50 American Jurisprudence, Section 527, at 534:

> Such general saving provisions are declarative of a continuing policy of the state that the repeal of any statute shall not release or extinguish any liability incurred, or affect any right accrued or claim arising, before the repeal takes effect, unless the repealing act expressly otherwise provides. They operate to make applicable in the designated situations the law as it existed before the repeal, and are upheld as a rule of construction to be applied, where not otherwise provided, as a part of all subsequent repealing statutes.

{¶ 25} Thus, where a legislature passes such a "general savings provision," prosecutions pending at the time of a repeal may advance under the former law, unless the governing body repealing the law demonstrates a contrary intent. *Id.* at 150-52;

*Lawrence* at paragraph one of the syllabus. *State ex rel. Bd. of Edn. v. State Bd. of Edn.*, 174 Ohio St. 257, 260 (1963) ("Although the repeal of a statute renders it inoperative, the repeal ordinarily does not set aside acts which were consummated or deprive persons of rights which accrued under the statute. * * * To undo such results by a repeal is to give it retroactivity.").

{¶ 26} Under Ohio law, to overcome the presumption of proactive application and demonstrate an intent contrary to the general savings provision, the language of the repeal must expressly and clearly require its application to pending prosecutions and legal proceedings. *Id.*; *Lawrence* at paragraph one of the syllabus; *Kelley v. State*, 94 Ohio St. 331, 338-39 (1916); *State v. Heston*, 5th Dist. No. 2009-CA-0086, 2010-Ohio-2939, ¶ 16. *See also State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, paragraph one of the syllabus; *Johnston v. State*, 144 Ohio St.3d 311, 2015-Ohio-4437, ¶ 22. *But see Dorsey v. United States*, 132 S.Ct. 2321, 2331-36 (2012) (finding that Congress intended, by implication, for lower mandatory minimums of a new sentencing act to apply to "pre-Act offenders" who were sentenced after the act).

{¶ 27} Here, both the state of Ohio and the city of Columbus have general savings provisions.[3] R.C. 1.58; Columbus City Code 101.05. Pertinent to this case, the general savings provision for the city of Columbus states that "[t]he repeal of an ordinance shall not affect any punishment or penalty incurred before the repeal took effect, *nor any suit, prosecution or proceeding pending at the time of the repeal*, for an offense committed under the ordinance repealed." (Emphasis added.) Columbus City Code 101.05. We find that the plain language of Columbus City Code 101.05 applies to save prosecutions pending for Columbus General Code 590.02(a)(3). As such, the municipal court retained authority over prosecutions pending at the time of the repeal of Columbus General Code 590.02(a)(3), absent city council's intent to the contrary. In this case, it is undisputed that the repealing act of the city does not expressly state that it should apply to pending actions or have retroactive effect. Although appellant argues that the city's emergency measures and implications to the contrary arise from city council's actions, we disagree

---

[3] Under the Ohio general savings statute, "the crime does not abate, but any reduced penalties are applied retroactively." *Raynovich* at ¶ 8, citing R.C. 1.58(B). The city of Columbus's general savings ordinance does not include a similar provision to reduce penalties retroactively.

that the record here shows that city council intended the repeal of Columbus General Code 590.02(a)(3) and 599(a) to affect pending prosecutions ordinarily preserved by the city's general savings ordinance. Considering the facts of this case, we find the municipal court retained subject-matter jurisdiction to convict and sentence appellant, pursuant to Columbus General Code 590.02(a)(3) and 599(a), for acts committed and a complaint filed prior to the repeal of those city ordinances.

{¶ 28} Appellant additionally contends that his conviction and sentencing under a repealed law constitutes plain error. In support of his argument, appellant cites to *State v. Thompson*, 2d Dist. No. 2003-CA-5, 2003-Ohio-4432. In *Thompson*, the defendant was charged by a complaint filed on December 31, 2002, with domestic violence, pursuant to R.C. 2919.25, and attempting to purchase or consume beer or intoxicating liquor pursuant to R.C. 4301.632. The appellate court sua sponte reversed the defendant's conviction and sentence for violating R.C. 4301.632 as plain error because the statute had been repealed on October 11, 2002.

{¶ 29} Here, unlike *Thompson*, the repeal of the pertinent statute occurred after the offending conduct and filing of the complaint. As a result, the application of plain error in *Thompson* does not support appellant's argument on the facts of the case at hand. Moreover, appellant has not otherwise demonstrated that an obvious error occurred that affected his substantial rights. As such, we find that appellant failed to establish plain error. *Spaulding* at ¶ 64; Crim.R. 52(B).

{¶ 30} Accordingly, appellant's first assignment of error is overruled.

**B. Second Assignment of Error**

{¶ 31} Under the second assignment of error, appellant contends that his conviction for violating Columbus General Code 590.02(a)(3) was not supported by sufficient evidence. We disagree.

{¶ 32} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 33} In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). Further, "the testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 34} In order to find appellant guilty of former Columbus General Code 590.02(a)(3), appellee had to prove beyond a reasonable doubt that appellant (1) solicited, arranged, dispatched, drove, operated, or otherwise was in physical control of any peer-to-peer transportation network vehicle, (2) for the purpose of carrying passengers for hire, gift, donation, or other consideration, (3) without the current decal issued by the license section clearly and properly displayed on the passenger side of the front and rear windshield of the approved vehicle.

{¶ 35} Appellant does not contest that he operated, drove, or at least was in physical control of an approved peer-to-peer transportation network vehicle for the purpose of carrying passengers for hire, and our review of the transcript confirms these requirements of the ordinance were met. Rather, appellant argues that Shicks did not testify that she examined the passenger side or rear of the vehicle to determine whether the decals were displayed on the windshields and that the testimony appears to position

Shicks at the driver's side window on the opposite side from where the decals were supposed to be placed. We find appellant's argument contrary to the record.

{¶ 36} Shicks testified that in daylight and clear conditions, her attention was drawn to appellant because "[h]e had an Uber decal hanging from his rearview mirror, but did not have the city-issued decals that showed it was a licensed Uber in the front and rear passenger window on the passenger side." (Tr. at 10.) Furthermore, Shicks testified that she approached the vehicle and stood "[w]ithin two feet" of the vehicle's window. (Tr. at 20.) Defense counsel specifically asked Shicks whether she was "standing beside his passenger side window," which Shicks confirmed. (Tr. at 26.) If believed, this evidence supports appellant's conviction.

{¶ 37} Accordingly, appellant's second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 38} Under the third assignment of error, appellant contends that his conviction was against the manifest weight of the evidence. For the following reasons, we disagree.

{¶ 39} "Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence." *State v. McCombs*, 10th Dist. No. 15AP-245, 2015-Ohio-3848, ¶ 3, citing *Thompkins* at 387. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38.

{¶ 40} When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case

in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 41} Appellant argues that the conviction is against the weight of the evidence because Shicks did not testify that she viewed the front and rear windshields and only had contact with appellant on the driver's side, that the trial court apparently did not consider Shicks credible in finding appellant not guilty of the soliciting offense, and that appellant's testimony that he displayed the decals, that defense exhibit B depicted the rear decal, and that he turned in the decals to the license section at a hearing after the incident indicates that the decals were properly mounted to his vehicle. We disagree.

{¶ 42} First, appellant's testimony is not complete in showing he met the requirement of "*clearly* and properly display[ing] [the decals] on the *passenger side of the front and rear windshield*[*s*] of the approved vehicle." (Emphasis added.) Columbus General Code 590.02(a)(3). Appellant testified that he displayed the decals "[o]ne in the front, one in the rear." (Tr. at 38.) Appellant did not testify that the decals were on the passenger side windshields. Furthermore, during appellant's testimony regarding the photographs of his vehicle, appellant admitted that he did not have a photograph of the front windshield of the vehicle and described his rear windshield as "very tinted" and "hard to see through." (Tr. at 39.) Appellant's contention that he turned in the decals to police supports that he possessed the decals but does not provide evidence as to the proper display of the decals.

{¶ 43} As stated in the second assignment of error, Shicks testified that she observed that appellant did not have the city-issued decals displayed in the front and rear passenger windows and confirmed that she observed appellant's vehicle from the passenger side of the car, within two feet of the window and in the daylight. Contrary to appellant's argument, the trial court did not base its determination that appellant was not guilty of the solicitation charge on Shicks' lack of credibility. The trial court stated that the evidence was "close" on that charge and that the discrepancy between Shicks' and appellant's accounts was due to a situation where a "miscommunication" occurred. (Tr. at 54, 55.) Moreover, based on our review of the entire record and, after weighing the evidence and all reasonable inferences and considering the credibility of witnesses, in

resolving the conflict in the evidence, the trial court did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶ 44} Accordingly, appellant's third assignment of error is overruled.

## IV. CONCLUSION

{¶ 45} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____