[Cite as *State v. Robinson*, 2024-Ohio-455.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 112853 |
| v. | : | |
| SHERMAN ROBINSON, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED; VACATED
**RELEASED AND JOURNALIZED:** February 8, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-656630-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Megan Helton, Assistant Prosecuting Attorney, *for appellee.*

Jonathan N. Garver, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Sherman Robinson ("Robinson"), appeals his conviction for gross sexual imposition following a jury trial. He contends that his conviction was not supported by sufficient evidence and was against the manifest

weight of the evidence. He also contends that the trial court abused its discretion and violated his right of confrontation by allowing two of the state's witnesses to testify by Zoom and by allowing the state to play a video of a social worker's forensic interview of the alleged victim for the jury. Robinson further contends that the trial court denied him due process and violated his right to a fair trial by (1) resuming trial, in his absence, after Robinson failed to return following a court recess and (2) making "improper comments" to the jury. For the reasons that follow, we reverse the trial court and vacate his conviction.

**Factual Background and Procedural History**

{¶ 2} On February 26, 2021, a Cuyahoga County Grand Jury indicted Robinson on one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony. The indictment alleged that Robison had sexual contact, "to wit: touched bottom," with Z.H., who was not his spouse and who was less than 13 years old at the time of the sexual contact. Robinson pled not guilty to the charge.

{¶ 3} The case proceeded to a jury trial on June 30, 2022. Although he was due in court at 10 a.m., Robinson (who was out on bond) did not arrive until 10:45 a.m. The trial court told Robinson, "Don't let it happen again."

{¶ 4} The trial court then proceeded with jury selection. At approximately 1:40 p.m., after the jury was empaneled and sworn, the trial court recessed for lunch. Everyone was instructed to return to the courtroom at 2:25 p.m. Robinson left the courtroom at the recess but never returned. Defense counsel requested that the case be discharged and a mistrial declared, or, in the alternative, that court adjourn for

the day, stating that he would attempt to secure Robinson's reappearance for trial for the following day. Defense counsel argued that Crim.R. 43(A) required the presence of the defendant "at every stage of the trial" and that he needed Robinson to be available to assist in his defense to try the case effectively. A capias was issued for Robinson's arrest on July 1, 2022.

{¶ 5} The state requested that the trial proceed, indicating that its witnesses had been in court since 11:00 a.m., "waiting to get started." She argued that Robinson's "voluntary absence" did not prevent the trial court from "continuing the trial to and including the verdict" under Crim.R. 43.

{¶ 6} The trial court denied defense counsel's request, finding Robinson's absence to be "voluntary" and reasoning as follows:

> So the record shall demonstrate that, in fact, I addressed this Defendant and issued a warning to him about his tardiness this morning because I think he was at least 45 minutes late.
>
> He also, as I mentioned on the record earlier, was apparently using drugs and had to be Narcan'd before one of his court appearances. * * * So even after all this and my warning today, now he's not here again. So it's an absence that's voluntary on his part. * * * It's really regrettable not only for his case, but I regret, [defense counsel], that you have to sit there without a client.
>
> I know it's not good, but there's really nothing I can do about it. And the counterbalancing interest that I'm weighing is the obvious not only inconvenience, but repeated trauma to the alleged victims in this case, the mother of the daughter who have been in this court repeatedly and have been down here all day.
>
> I don't wish to, you know, constantly put them through yet another trial date and yet another pretrial. You know, we've spent a considerable amount of time * * * selecting the jury. All of this would have to be redone. And unless he's arrested, there's no way to

guarantee he's going to cooperate at that point, so we're going to go forward.

{¶ 7} At trial, the state presented testimony from five witnesses: Z.H., the alleged victim; her sister, O.H.; her grandmother, Gertrude McCullum; social worker Tanya Kraus, who formerly worked for the Cuyahoga County Division of Children and Family Services ("CCDCFS"); and Cleveland Police Detective Theresa Cavett. McCullum and Kraus testified via Zoom.

{¶ 8} Z.H. and O.H. testified on the first day of trial. Z.H. testified that on September 27, 2020, she was in her grandmother's living room, braiding her grandmother's hair, while her grandmother sat in a recliner. Her sister O.H., her younger brother, two young nephews and Robinson were also present. She stated that Robinson, also known as "Stank," was a man her aunt had "brought * * * in[to] the family," that she had known Robinson since she was little and that she referred to him as "uncle." She indicated that Robinson had come back from a funeral with a beer can in his hand and was drunk. Z.H. was shown a picture of Robinson and identified him for the record.

{¶ 9} Z.H. testified as she was standing in the corner, braiding her grandmother's hair, Robinson sat on the floor next her and "rubbed on my leg." Z.H. explained that Robinson's hand started at her feet and went "all the way up" "stop[ping]" at "[t]he corner of my butt." At the request of the assistant prosecuting attorney, Z.H. showed the jury the location on her body where Robinson's hand had stopped, indicating with her hands that "[h]e went all the way up here to right here,"

"[r]ight here, all the way up to right here."[1]  After Z.H. showed the jury where Robinson had touched her, the assistant prosecuting attorney continued with her direct examination of Z.H., seeking to clarify exactly where Robinson had touched Z.H.:

Q.  * * * Did his hand touch your butt?

A.  No.

Q.  No?  Where do you refer to as your butt?

A.  By my thigh.

Q.  By your thigh.  Is it above your thigh?

A.  No.

Q.  Do your pants cover your butt?

A.  Yes.

Q.  Were you wearing clothes that day?

A.  Yes.

Q.  Okay.  Did his hands touch the part that covers your butt?

A.  No.

{¶ 10}  Z.H. testified that when Robinson touched her, she looked over at him and saw him rub his fingers against his thumb, making a "money" sign, then place his index finger to his lips, making a "shh" sign.

---

[1] There is no indication in the record what Z.H. demonstrated to the jury, e.g., no one stated, "let the record reflect that Z.H. touched or pointed to x" or otherwise documented for the record the location of "right here," where Z.H. indicated Robinson's hand had stopped.

**{¶ 11}** Z.H. stated that she immediately moved away from Robinson and told her grandmother what had happened, i.e., "[t]hat he rubbed on my leg." Z.H. explained that her mother had taught her that if someone touches her, she should say something right away and that that is exactly what she did. She indicated that she felt she had to speak up "[b]ecause it was right to speak when something happens on your body that don't supposed to happen."

**{¶ 12}** Z.H. stated that her grandmother told Robinson to leave and called the police. Z.H. testified that she later spoke with police and a social worker and told them what had happened:

> Q. Okay. [Z.H.], when you were speaking with the police and the social worker, do you remember telling them that Sherman had rubbed your butt?
>
> A. Yes.
>
> Q. Yes. Okay. And when you say the bottom of your butt, are you referring to the part of your body that your clothes — your pants cover?
>
> A. Yes.
>
> Q. Okay. And so when we — when the jury's deciding and listening to the testimony, did Sherman touch your butt?
>
> A. No.
>
> Q. No. Did he make it up that far?
>
> A. No.
>
> Q. Okay. Did you say something before he got that far?
>
> A. Yes.

**{¶ 13}** On cross-examination, Z.H. further testified:

Q. * * * You told the prosecutor that your uncle did not touch your bottom, is that correct?

A. Yes.

Q. Okay. Is that true?

A. Yes.

Q. I know that you've talked to a lot of adults throughout this process and I know that probably all of them or most of them have told you how important it is to tell the truth. Is that fair? Is that correct?

A. Yes.

Q. And you want to tell the truth, don't you?

A. Yes.

Q. You want to make sure everybody who is listening to what you had to say knows how it happened the way it happened, don't you?

A. Yes.

Q. And do you think that you've done that today? Have you told the truth?

A. Yes.

{¶ 14} At the time of the incident, Z.H. was nine years old. At the time of her trial testimony, Z.H. was 11 years old.

{¶ 15} O.H., Z.H.'s 13-year-old sister, testified that on September 27, 2020, she was sitting on the couch in her grandmother's living room. She indicated that, at first, Robinson was over by her, but that after Z.H. shifted from one side to the other as she was braiding their grandmother's hair, Robinson moved towards the recliner and "act[ed] like he was plugging up his phone, but he wasn't." O.H. stated

that, at that point, her grandmother was facing away from Robinson and could not see him or Z.H. O.H. testified that she observed Robinson gesture towards Z.H., making the "money" sign and the "ssh" sign, which she interpreted as him telling Z.H. to be quiet and he would give her money. O.H. testified that her grandmother then cursed, told Robinson to leave and called their mother.

{¶ 16} Robinson remained absent on the second day of trial. Defense counsel stated that he had "reached out to every contact number I have" but had still "not established contact" with Robinson. Before witness testimony resumed, the state made an oral motion to amend the indictment under Crim.R. 7(D), requesting that the "to wit portion of the charge" be amended to state "to wit: touched bottom *and/or thigh*." (Emphasis added.) Defense counsel objected to the proposed amendment, arguing that (1) it deprived Robinson of his due process rights "by virtue of this evidence not having been signed off on by a Grand Jury," (2) it would be prejudicial given that the evidence came out after Robinson's absence, changing the case "significantly," when Robinson was not present to assist in his defense and (3) the evidence did not support an amendment because the word "thigh" was not "used, whatsoever, in the testimony."

{¶ 17} After considering the parties' arguments, the trial court indicated that, "normally," it would permit such an amendment but that because the defendant was not present to assist his counsel, "who has to now continue on" at "an extreme disadvantage," the trial court denied the motion.

{¶ 18} McCullum, Kraus and Cavett testified on the second day of trial. McCullum testified that when the incident occurred, she was in the living room of her Cleveland apartment with Z.H., O.H., two of her young male grandchildren and Robinson. McCullum stated that she was sitting in a recliner and that Z.H. was standing to her right side, combing and braiding her hair. She indicated that, at first, Robinson was on her left side. After claiming that his phone would not charge in the outlet on her left side, Robinson then moved to another outlet on her right side, closer to Z.H. She stated that from her vantage point she could see both Z.H. and Robinson. McCullum testified that, "after a while," Z.H. "screamed," "[G]randma, he put his hand up my leg. He putting his hand up my leg," then ran "from the right to the left." She stated that Z.H. was "panicked," "scared" and "upset."

{¶ 19} McCullum testified that she asked Robinson, "[W]hat did you do to my * * * granddaughter?" and that Z.H. then looked Robinson "straight in the eyes" and told him, "[M]y mama told me if anybody touched me inappropriate to let somebody know. My grandma right here and I done told my grandma what you was doing to me."

{¶ 20} McCullum testified that she then "put [Robinson] out of [her] house" and called Z.H.'s mother. She indicated that when Z.H.'s mother arrived, she told her what had happened.

{¶ 21} On October 13, 2020, Kraus, who was then a child protection service worker in CCDCFS' sex abuse unit, conducted a videotaped forensic interview of

Z.H. at the Child Advocacy Center ("CAC"). Kraus explained that a forensic interview is conducted in a "good environment, safe environment" and that the interviewer (who has specialized training) asks open-ended questions to "giv[e] the child the opportunity to say what has actually happened." She stated that when conducting a forensic interview, she attempts to determine whether a child may need medical or psychological treatment as a result of the trauma they have experienced and that she will make referrals for medical or psychological treatment if warranted. Kraus explained her reports are shared with law enforcement and that the interviews are characterized as "forensic" interviews because "they're going to be used in court." Kraus could not recall whether she made any referrals following her forensic interview of Z.H.

{¶ 22} Over defense counsel's objection, a four-minute "clip" from Kraus' forensic interview of Z.H. was played for the jury during Kraus' testimony. The video was not included in the record forwarded to this court on appeal[2] and any dialogue captured in the recording was not transcribed as part of the trial transcript.

{¶ 23} Cavett, a detective in the Cleveland Police Department's sex crimes and child abuse unit, conducted an investigation of the incident. She testified that after she was assigned this case, she conducted a background check on Robinson, then contacted CCDCFS, where she learned the case had been assigned to Kraus to conduct a forensic interview of Z.H. She stated that, when investigating a case

---

[2] The video was not admitted as an exhibit. The only exhibit admitted into evidence was the picture of Robinson the state showed to Z.H. and O.H.

involving a child, she does not interview the child herself but, instead, waits for the "CAC interview" because such interviews are conducted by "trained forensic interviewer[s]" and "putting a child through one interview versus multiple interviews by different people is perhaps less traumatic for them." Cavett stated that as part of her investigation, she also brought Robinson in for an interview and spoke with Z.H.'s mother and grandmother, who informed her that they "didn't witness anything."

{¶ 24} The state rested, and Robinson moved for acquittal pursuant to Crim.R. 29. The trial court denied the motion. Robinson rested without presenting any witnesses, then renewed his Crim.R. 29 motion. Once again, the trial court denied the motion.

{¶ 25} On July 1, 2022, the jury found Robinson guilty of gross sexual imposition.

{¶ 26} Robinson was arrested on the outstanding capias on December 16, 2022.

{¶ 27} On January 4, 2023, the trial court sentenced Robinson to four years in prison and five years of mandatory postrelease control. Robinson was also required to register as a Tier II sexual offender/child offender.

{¶ 28} Robinson appealed, raising the following seven assignments of error for review:

> Assignment of Error I: The trial court violated Appellant's right to due process of law and a fair trial by resuming trial in his absence when Appellant failed to return on time after a noon recess.

Assignment of Error II: The trial court violated Appellant's right of confrontation by allowing prosecution witnesses to testify at trial by zoom.

Assignment of Error III: The trial court abused its discretion and violated Appellant's right of confrontation, by allowing the state, after the alleged victim had testified, to play a video of an out-of-court interview of the alleged victim, conducted for investigatory purposes, where it was undisputed that the alleged victim was 9 years [old] at the time of the interview; the video contained "some splicing * * * and some muted audio"; and where the jury was not given access to the video during its deliberations.

Assignment of Error IV: The evidence adduced at trial was insufficient to prove beyond a reasonable doubt that Appellant engaged in sexual conduct by touching the alleged victim's butt.

Assignment of Error V: Appellant's conviction is against the manifest weight of the evidence.

Assignment of Error VI: The trial court denied Appellant due process of law and a fair trial and by making improper comments to the jury.

Assignment of Error VII: The cumulative errors committed by the trial court violated Appellant's right to due process of law and a fair trial.

{¶ 29} Because it is determinative of this appeal, we first address Robinson's fourth assignment of error first.

**Law and Analysis**

**Sufficiency of the Evidence**

{¶ 30} In his fourth assignment of error, Robinson argues that there was insufficient evidence to support his conviction for gross sexual imposition because Z.H. "repeatedly testified" that Robinson "did not touch her butt" and none of the other witnesses who were present at the time of the incident testified that Robinson

"touched Z.H.'s 'bottom' or buttocks." The state responds that there was sufficient evidence to support Robinson's conviction — even though Z.H. "did not explicitly state that [Robinson] touched her buttocks or butt" — because (1) during her testimony, Z.H "described the area he touched as the 'corner of' her buttocks," "an area of the body * * * that * * * is an erogenous zone," (2) she showed the jury where Robinson had touched her and (3) Z.H. "disclosed the sexual assault" to her grandmother and the social worker, Kraus. We agree with Robinson.

{¶ 31} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41. The relevant inquiry in a sufficiency challenge is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The court examines all the evidence admitted at trial to determine whether such evidence, if believed, would convince a reasonable juror of the defendant's guilt beyond a reasonable doubt. *State v. Williams*, 8th Dist. Cuyahoga No. 111922, 2023-Ohio-2296, ¶ 81, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring); *see also State v. Bankston*, 10th Dist. Franklin No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness

credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). Whether the evidence is legally sufficient to support a verdict is a question of law. *Thompkins* at 386.

{¶ 32} Robinson was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4). R.C. 2907.05(A)(4) states, in relevant part: "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * "[t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." "Sexual contact" is "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). As indicted, Robinson was charged with "sexual contact, 'to wit: touched bottom,' with Z.H." The trial court denied the state's request, after the conclusion of Z.H.'s testimony, to amend the "to wit" portion of the charge to state "to wit: touched bottom and/or thigh."

{¶ 33} Thus, to support a guilty verdict for gross sexual imposition, the jury needed to find beyond a reasonable doubt that (1) Robinson engaged in sexual contact with Z.H. by "[t]ouch[ing] [her] bottom," (2) that Z.H. was not Robinson's spouse and (3) that Z.H. was less than 13 years old when the sexual conduct occurred. R.C. 2901.05(E) defines "reasonable doubt" and "proof beyond a reasonable doubt" as follows:

"Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs.

{¶ 34} The parties stipulated that Z.H. was not Robinson's spouse and to her date of birth as March 4, 2011. Accordingly, there is no dispute that Z.H. was under 13 years old at the time the alleged sexual contact occurred. The sole issue here is whether the state presented sufficient evidence to support a finding that Robinson engaged in sexual contact with Z.H. by "[t]ouch[ing] [her] bottom."

{¶ 35} In this case, although O.H. observed Robinson's hand gestures and McCullum testified to Z.H.'s comments and reaction after her interaction with Robinson, they did not observe Robinson touching her. Z.H. was the only witness who testified as to exactly where Robinson did (and did not) touch her.

{¶ 36} The state argues that it presented sufficient evidence to support Robinson's conviction based on Z.H.'s testimony that "[Robinson] touched the corner of her buttocks after he ran his hand up her foot and leg." However, a careful reading of the transcript reveals that Z.H. testified that Robinson's hand "stop[ped]" at the corner of her buttocks, not that he "touched" the corner of her buttocks. Based on the wording of the indictment, it was not sufficient for the state to prove that Robinson had sexual contact with Z.H. by touching any erogenous zone. As charged,

the state needed to prove beyond a reasonable doubt that Robinson "touched [Z.H.]'s bottom."

{¶ 37} As detailed above, during her direct and cross-examination, Z.H. answered many questions regarding exactly where Robinson did (and did not) touch her. She testified repeatedly, consistently and unequivocally that Robinson never touched her "butt," her "bottom" or "the part [of her clothing] that covers [her] butt."

{¶ 38} Although Z.H. twice demonstrated to the jury where Robinson touched her, what Z.H. showed the jury was not documented in the record. Accordingly, we have no way of knowing what Z.H. demonstrated to the jury. However, immediately after her demonstration to the jury, when asked by the assistant prosecuting attorney if Robinson had touched her "butt," Z.H. responded that he had not done so.

{¶ 39} Also, although the record reflects that Z.H. immediately told her grandmother what had happened, there is no evidence that Z.H. told her grandmother that Robinson touched her "butt" or "bottom." Z.H. testified that she told her grandmother "[t]hat he rubbed on my leg." McCullum testified that Z.H. screamed and told her that Robinson "put his hand up my leg."

{¶ 40} Because it is not part of the record forwarded to us on appeal, we do not know what Z.H. disclosed to, or showed, Kraus during her forensic interview (even assuming it was properly shown to the jury). However, regardless of what Z.H. may or may not have told or shown Kraus, the fact remains that Z.H. repeatedly, consistently and unequivocally testified under oath at trial that

Robinson never touched her "butt" or "bottom." Although during her direct examination, Z.H. acknowledged that she had previously told police and the social worker that Robinson had "rubbed [her] butt," upon further questioning, she made it clear that, in fact, Robinson's hand never made it to her "butt" because she spoke out "before he got that far."

{¶ 41} Following a thorough review of the record, viewing the evidence in the light most favorable to the state, we conclude that there was insufficient evidence to support a finding beyond a reasonable doubt that Robinson touched Z.H.'s bottom as charged. Accordingly, we sustain Robinson's fourth assignment of error and vacate his conviction for gross sexual imposition. Based on our resolution of Robinson's fourth assignment of error, his remaining assignments of error are moot.

{¶ 42} Judgment reversed; vacated.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
MARY J. BOYLE, J., CONCUR